[No. 12913–2–II. Division Two. November 29, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. GERALD HOLT,
ET AL, *Appellants.*

*John S. Abolofia, Abolofia & Hershman, Robert L. Wilson,* and *Rosell & Associates,* for appellant Holt.

*Gilbert H. Levy* and *Levy & Hamilton,* for appellant Verner.

*Peter Kram* and *Leggett & Kram,* for appellant Alanjian.

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn–Brintnall, Senior Appellate Deputy,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

WORSWICK, J.—Kabos Alanjian, Gerald Holt, and John Verner appeal convictions of promoting pornography. RCW 9.68.140. Holt and Alanjian operated "adult" bookstores. Verner worked in Holt's store. Each appellant sold allegedly lewd magazines to an undercover police officer. Finding no reversible error, we affirm, and we limit our discussion to selected issues.[1]

Relying on *J–R Distribs., Inc. v. Eikenberry,* 725 F.2d 482 (9th Cir. 1984), appellants contend that the statutory scheme under which they were charged is constitutionally overbroad. This is so, they argue, because of the definition of "prurient" in RCW 7.48A.010(8).[2] In *J–R Distributors*

---

[1] Holt and Verner were charged and convicted separately from Alanjian. The cases have been consolidated for this appeal. Not all appellants make the same contentions. We will not identify the source of a specific contention except as necessary to the discussion.

[2] RCW 9.68.140 provides:
"A person who for profit–making purposes and with knowledge, sells, exhibits, displays, or produces any lewd matter as defined in RCW 7.48A.010 is guilty of promoting pornography. . . ."

the Ninth Circuit held that "lust" suggests a normal sexual desire that is not "prurient," that the inclusion of the word in the statutory definition of "prurient" allowed the proscription of protected speech, and accordingly that the statute was constitutionally invalid. The flaw in appellants' position is that *J–R Distributors* is not the law; it was reversed in *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 86 L. Ed. 2d 394, 105 S. Ct. 2794 (1985).

■ The United States Supreme Court was "unconvinced that the identified overbreadth is incurable and would taint all possible applications of the statute, . . .". *Brockett,* 472 U.S. at 504. The Court said:

> If, as we have held, prurience may be constitutionally defined for the purposes of identifying obscenity as that which appeals to a shameful or morbid interest in sex, [citation omitted], it is equally certain that if the statute at issue here is invalidated only insofar as the word "lust" is taken to include normal interest in sex, the statute would pass constitutional muster and would validly reach the whole range of obscene publications. . . .

*Brockett,* 472 U.S. at 504–05. In *State v. Reece,* 110 Wn.2d 766, 757 P.2d 947 (1988), *cert. denied,* 110 S. Ct. 59 (1989), our Supreme Court held that the statute remains enforceable, and that the overbreadth may be cured by a limiting

---

RCW 7.48A.010(2) defines "lewd matter" as:

· "(2) 'Lewd Matter' is synonymous with 'obscene matter' and means any matter:

"(a) Which the average person, applying contemporary community standards, would find, when considered as a whole, appeals to the prurient interest; and

"(b) Which explicitly depicts or describes patently offensive representations or descriptions of:

"(i) Ultimate sexual acts, normal or perverted, actual or simulated; or

"(ii) Masturbation, fellatio, cunnilingus, bestiality, excretory functions, or lewd exhibition of the genitals or genital area; or

"(iii) Violent or destructive sexual acts, including but not limited to human or animal mutilation, dismemberment, rape or torture; and

"(c) Which, when considered as a whole, and in the context in which it is used, lacks serious literary, artistic, political, or scientific value."

RCW 7.48A.010(8) defines "prurient" as:

". . . that which incites lasciviousness or lust."

jury instruction. *Reece,* 110 Wn.2d at 773.[3] Proper limiting instructions were given in these cases.

The Alanjian jury was instructed that "prurient" means "a shameful or morbid interest in sex or nudity." This definition satisfies the *Brockett* test. *See Brockett,* 472 U.S. at 505. The Holt jury was told that: "[a] prurient interest is a lascivious, shameful, or morbid interest in sex or nudity. A normal or healthy interest in sex or nudity is not a prurient interest. . . ." This language also satisfies the *Brockett* test.

Holt argues, however, that "lascivious" is synonymous with "lust," and that the instruction does not cure the overbreadth; rather, it presents a definition as impermissibly broad as if the word "lust" had been included. We disagree.

Even assuming that "lascivious" can be understood to include a "normal" interest in sex, the problem is resolved by the limiting effect of the instruction's second sentence. The jury was explicitly instructed that a "normal and healthy interest in sex" is not a "prurient interest."[4]

---

[3]*Reece* also held that "if a publication meets the federal test as an obscenity, it may be banned under both the state and federal constitutions. . . ." *Reece,* 110 Wn.2d at 776. This disposes of the appellants' argument that the State constitution affords broader protection to publications of this kind than does the federal constitution.

[4]We also reject two other constitutionally based arguments. First, the statute is not rendered unenforceable by the section 10 "emergency clause." Even if, as argued, the right to referendum under the state constitution was impaired, the statute nevertheless became law 90 days after it was enacted and this argument is therefore moot. *State v. Hayes,* 108 Wn.2d 344, 349, 738 P.2d 276 (1987).

Next, RCW 9.68.015, exempting from prosecution certain educational institutions, does not violate equal protection since there is a rational basis for excluding organizations that do not hold obscene material for profit–making purposes. *See State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 512 P.2d 1049 (1973) (equal protection challenge of obscenity statute requires showing that classification lacks rational basis and is arbitrary), *cert. denied,* 418 U.S. 949, 41 L. Ed. 2d 1166, 94 S. Ct. 3217 (1974). Neither does the State's decision to prosecute adult bookstores rather than video outlets violate equal protection, as the record shows that this choice was a legitimate exercise of prosecutorial discretion, and was not based upon an arbitrary classification. *State v. Judge,* 100 Wn.2d 706, 675 P.2d 219 (1984).

Next, appellants contend that the statutory definition of "lewd matter" impermissibly deviates from the test of obscenity in *Miller v. California,* 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973). RCW 7.48A.010(2)(c) states that lewd (or obscene) matter must lack "serious literary, artistic, political, or scientific value" but, unlike the *Miller* test, instructs that this conclusion be reached by considering the material as a whole *"and in the context in which it is used."* (Italics ours.) Appellants argue that the emphasized language impermissibly injects a subjective element into what must be an objective test. *See Pope v. Illinois,* 481 U.S. 497, 95 L. Ed. 2d 439, 107 S. Ct. 1918 (1987) (lack of serious value must be determined with reference to objective "reasonable person" standard, not subjective "contemporary community standards").

█ Our Supreme Court considered this argument in *Reece,* and held that "context considerations are permissible in obscenity cases." *Reece,* 110 Wn.2d at 773. Appellants have not demonstrated how this statutory phrase turns an objective element into a subjective one; their argument must fail.

█ Next, appellants argue that the State's failure to introduce evidence of "community standards" amounted to failure to prove an essential element of the crime. We disagree. The State did not introduce testimony to show "community standards," but it introduced the allegedly obscene materials into evidence. This was sufficient. *Reece,* 110 Wn.2d at 783; *see also Kaplan v. California,* 413 U.S. 115, 37 L. Ed. 2d 492, 93 S. Ct. 2680 (1973) (where the allegedly obscene material is introduced into evidence, no need for expert testimony or any other ancillary evidence of obscenity).[5]

---

[5]Since "community standards" need not be proven, several other arguments fail. Alanjian alleged that he was prejudiced by the prosecution's failure to disclose notes taken by an undercover officer prior to purchasing materials from Alanjian's store. The alleged prejudice arose because the notes were relevant to show the officer's formulation of "community standards," but since the law states that these materials may speak for themselves, these notes were of no import.

Next, Holt contends that the "to–convict" instructions on the multiple charges against him lacked an essential element of the offense, contained improper comments on the evidence, and in effect required directed verdicts on an important element of the crimes charged. We conclude that the instructions were erroneous, but that the error was harmless.

The following language appeared in each of the challenged instructions:

> (1) That on or about the 5th day of September, 1985, the defendant or an accomplice sold, exhibited, or displayed *lewd matter, to–wit: [title of allegedly obscene material]*.[6]

(Italics ours.) "Lewd matter" was properly defined in a separate, unchallenged instruction.[7]

Holt correctly asserts that a "to–convict" instruction must contain a complete statement of all the elements of the offense charged (*State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953)), and that an incorrect statement

---

Alanjian also argues that instructions that required the application of "community standards" allowed the jury to speculate. The failure to introduce evidence of community standards does not preclude a jury from determining that material is obscene after examining that material. *Reece*, 110 Wn.2d at 783.

It is Alanjian's contention that his arrest warrant was issued without probable cause, although the record shows that the judge examined firsthand the materials purchased at Alanjian's store. Just as a jury may determine obscenity from viewing the materials, so may a judge use the materials as a basis for issuances of an arrest warrant. *State v. J–R Distribs., Inc.*, 111 Wn.2d 764, 765 P.2d 281 (1988) (reasonably specific affidavit describing the allegedly obscene materials provides an adequate basis to issue a warrant).

[6]Holt's proposed instruction properly separated out the various elements:
1. That on or about September 5, 1985, the defendant . . . sold . . . [allegedly obscene material]; and
2. That [material] was sold with knowledge and for profit–making purposes; and
3. That [material] was lewd matter as that term is defined in these instructions and was legally obscene; . . .

[7]Holt did not except to these instructions at trial, and he asserts constitutional error here to overcome this deficiency. RAP 2.5(a)(3). Having applied the criteria outlined in *State v. Scott*, 110 Wn.2d 682, 757 P.2d 492 (1988), we are satisfied that at least one constitutional argument is properly before us, and that we should consider it.

of the law is presumed prejudicial. *State v. MacMaster,* 113 Wn.2d 226, 778 P.2d 1037 (1989). The challenged instructions, however, were not defective for this reason, because they contained a complete statement of the elements necessary to convict Holt of promoting pornography. However, the instructions could have been read as a direction, or as a comment by the court, that the material was in fact lewd.[8] An instruction that, in effect, tells the jury that a criminal case verdict is mandatory is constitutionally defective. *State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183 (1968). A comment on the evidence arises where "the court's attitude toward the merits of the cause are reasonably inferable from the nature or manner of the questions asked and the things said." *State v. Cerny,* 78 Wn.2d 845, 855, 480 P.2d 199 (1971), *vacated in part,* 408 U.S. 939, 33 L. Ed. 2d 761, 92 S. Ct. 2873 (1972). It, too, is forbidden by the constitution. Const. art. 4, § 16.

 While the sloppy language of these instructions certainly permitted these interpretations, we conclude that this was harmless error. Our Supreme Court has articulated the harmless error test as follows:

> A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless.

*State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985); *see also State v. Ng,* 110 Wn.2d 32, 37, 750 P.2d 632 (1988).

 A jury instruction does not deprive a defendant of a fair trial if the instructions, when read as a whole, correctly state the applicable law, are not misleading, and allow each side to present its arguments. *State v. Foster,* 91 Wn.2d

---

[8]The prosecutor admitted during a posttrial motion that she was concerned about the correctness of these instructions. She had, in fact, anticipated a challenge by the defense. When the challenge never came, she made a "tactical decision" not to amend the instruction since she "had already, in effect, won." Her actions demonstrated a shocking lack of respect for constitutional protections. We are distressed to see the judicial system turned into a game to be won at the expense of a defendant's right to a fair trial.

466, 589 P.2d 789 (1979). "If instructions are such as are readily understood and not misleading to the ordinary mind, they are sufficiently clear." *Foster,* 91 Wn.2d at 480. The Holt case instructions, read as a while, met this test.

Relying on *Emmanuel,* Holt argues, however, that we may not look beyond the "to–convict" instructions to determine sufficiency. He is not correct. *Emmanuel* holds only that a "to–convict" instruction must contain all the *elements* of a crime. *Emmanuel,* 42 Wn.2d at 819. It does not stand for the proposition that clarifying *definitions* of elements may. not be contained in separate instructions. The "to–convict" instructions in Holt's case must be read in conjunction with the unchallenged definition of "lewd matter" provided in a separate instruction.

Holt's jury was separately instructed on the definition of lewd matter, and it is clear that the issue was thoroughly analyzed. This was evidenced by a jury inquiry relating to the "lewd matter" instruction, submitted to the judge during deliberations:

> [I]f a listed act is depicted does that make the publication lewd or does the act have to be depicted in a patently offensive manner for the publication to be lewd.[9]

The jury obviously was struggling with the element of "lewdness," demonstrating that the erroneous instruction was not read in isolation. We are convinced beyond a reasonable doubt that the instructions allowed a reasonable jury to consider each element of the charge properly. Considered as a whole, the instructions were not misleading or inaccurate and do not constitute reversible error.

We have examined all other contentions raised by appellants and find them without merit.

---

[9]The judge responded: "[A]ll words in the instructions are to be given effect by you in your deliberations. Please review all instructions carefully." Holt contends that the trial court erred in failing to give further instructions. The decision to give clarifying instructions is within the sound discretion of the trial court. *State v. Miller,* 40 Wn. App. 483, 489, 698 P.2d 1123, *review denied,* 104 Wn.2d 1010 (1985). Since the answer to the jury's inquiry could be found in the language of the instruction itself, the judge's response was not an abuse of discretion.

Affirmed.

PETRICH, A.C.J., and REED, J., concur.

Reconsideration denied January 11 and 23, 1990.

Review denied at 114 Wn.2d 1022 (1990).