[No. 31648-0-II.   Division Two.   November 1, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. STONEY ALLEN ZIMMERMAN, *Appellant*.

*Thomas E. Weaver, Jr.*, for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — Stoney Allen Zimmerman appeals his conviction for first degree child molestation. Zimmerman maintains that the trial court improperly commented on the evidence by instructing the jury that the testimony of the alleged victim need not be corroborated in order to find him guilty. He also maintains that under *State v. Jackman*, 125 Wn. App. 552, 104 P.3d 686 (2004), *review granted*, 155 Wn.2d 1007 (2005), his conviction must be reversed because the jury instructions included the victim's date of birth.

¶2 An instruction stating that a victim's report of sexual violation need not be corroborated is an accurate statement of the law. And while we agree with the recommendation of the Washington Supreme Court Committee on Jury Instructions that such an instruction is unnecessary, the Washington Supreme Court has upheld the instruction and we are bound by its rulings.

¶3 And although we adhere to our ruling in *Jackman* that it is manifest error to include the victim's date of birth in jury instructions when the victim's age is an element of the offense, we decline to follow that portion of *Jackman* holding that this error is not subject to a constitutional harmless error test. Applying that test here, we conclude that the inclusion of the victim's birth date in the to-convict instruction was harmless beyond a reasonable doubt. We therefore affirm.

## FACTS

¶4 Zimmerman is the biological father of the victim, J.C. Zimmerman met J.C.'s mom when she was 14, and they

began dating. J.C.'s mom was 16 when J.C. was born. Zimmerman and J.C.'s mom ended their relationship when J.C.'s mom was 19.

¶5 J.C. testified that she turned 11 on July 8, 2001. That summer, J.C. would often stay with Effie Harvey, a family friend who was also an acquaintance of Zimmerman's mother. One night in July, J.C. and Zimmerman were both staying at Harvey's house. Zimmerman and Harvey spent the night drinking. J.C. was awakened by her father touching her. Zimmerman, who appeared to be drunk, ran his hand up J.C.'s leg and touched her "private part" inside her underwear. 1 Report of Proceedings at 14. J.C. screamed, causing Harvey to come into the room. J.C. did not say anything to Harvey, and Zimmerman left the room. When J.C. awoke the next morning, Zimmerman was gone. Zimmerman would subsequently call J.C.'s mom and tell her that he wanted to disown J.C.

¶6 Initially, J.C. did not tell anyone, including Harvey, what had happened. But in 2002, J.C. disclosed the incident to her uncle, who then told J.C.'s mom. She then contacted Zimmerman, who denied the allegation.

¶7 J.C. met with her father in 2003 at the urging of Zimmerman's then girl friend, Jennifer Holcrow. Holcrow was aware of the molestation allegation but she thought that Zimmerman and J.C. could repair their relationship. The meeting was brief and the incident was not discussed. Holcrow would later testify that she ended her relationship with Zimmerman after he admitted, while intoxicated, that he had molested J.C. and that he had thought about performing oral sex on their roommate's seven-year-old daughter.

¶8 Zimmerman was eventually charged and convicted for one count of first degree child molestation.[1] One of the jury instructions stated: "In order to convict a person of the

---

[1] RCW 9A.44.083(1) states:

A person is guilty of child molestation in the first degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is less than twelve years old and not married to the

crime of child molestation as defined in these instructions, it is not necessary that the testimony of the alleged victim be corroborated." Clerks Paper's (CP) at 33. The to-convict instruction listed J.C.'s birth date.

¶9 This appeal followed.

## ANALYSIS

### BIRTH DATE OF VICTIM

■■ ¶10 Article IV, section 16 of the Washington Constitution provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Through this provision, "the framers of the constitution could not have more explicitly stated their determination to prevent the judge from influencing the judgment of the jury on what the testimony proved or failed to prove." *Bardwell v. Ziegler*, 3 Wash. 34, 42, 28 P. 360 (1891); *accord State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). A judge comments on the evidence if the comment suggests the judge's attitude toward the merits of the case or the judge's evaluation relative to the disputed issue. *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). It is thus error for a judge to instruct the jury that "matters of fact have been established as a matter of law." *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997).

¶11 In *Jackman*, the defendant challenged the inclusion of the victims' birth dates in the to-convict instructions for counts of sexual exploitation of a minor, patronizing a juvenile prostitute, communication with a minor for immoral purposes, and furnishing liquor to a minor.[2] On each

---

perpetrator and the perpetrator is at least thirty-six months older than the victim.

[2] Another jury instruction stated:

"It is not a defense to the charge of Sexual Exploitation of A Minor that at the time of the offense the defendant did not know the age of B.L.E., D.O.B. 04/21/1985, L.C.E., D.O.B. 10/21/1985, or M.T.F., D.O.B. 08/01/1984, or that the defendant believed B.L.E., D.O.B. 04/21/1985, L.C.E., D.O.B. 10/21/1985, or M.T.F., D.O.B. 08/01/1984 to be older."

*Jackman*, 125 Wn. App. at 558 n.2.

of those counts, the victim's birth date was a relevant fact for the State to establish in order to prove the victim's age at the time of the crime. *See* RCW 9.68A.040, .090, .100; RCW 66.44.270. We held that the court's jury instructions were an improper comment on the evidence. *Jackman*, 125 Wn. App. at 559-60. We then concluded that such error was not subject to harmless error analysis under *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). *Jackman*, 125 Wn. App. at 560-61.

¶12 We follow *Jackman* here to conclude that it was manifest constitutional error to include J.C.'s birth date in the to-convict instruction for first degree child molestation;[3] the instruction conclusively answered a factual question relevant to the State's burden of proving beyond a reasonable doubt that J.C. was younger than 12 at the time of the alleged sexual contact. *See* RCW 9A.44.083. But we decline to follow that portion of *Jackman* holding that such error requires automatic reversal. In so doing, we are not unmindful of the principle of stare decisis, which " 'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' " *Keene v. Edie*, 131 Wn.2d 822, 831, 935 P.2d 588 (1997) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991)). But as discussed below, we believe that *Jackman* erred by not applying harmless error analysis.[4]

---

[3] The improper instruction stated in pertinent part:

To convict the defendant of the crime of child molestation in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

   (1)   That on or between June 1, 2001 and July 31, 2001, the defendant had sexual contact with J.C. (*7/8/1990*),

   (2)   That J.C. was less than twelve years old at the time of the sexual contact and was not married to the defendant.

CP at 32 (emphasis added).

[4] In *International Association of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 37 n.9, 42 P.3d 1265 (2002), the Washington Supreme Court wrote: "[T]he City asserts that under the doctrine of stare decisis it could not have asked the Court of Appeals to overrule itself. However, this is an inaccurate statement of the law.

¶13 " '[M]ost constitutional errors can be harmless.' " *Neder*, 527 U.S. at 8 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). Only those errors that are "structural" require automatic reversal. *Neder*, 527 U.S. at 8. Structural errors are of a very limited class, " 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Neder*, 527 U.S. at 8 (quoting *Fulminante*, 499 U.S. at 310). Put another way, structural errors " 'infect the entire trial process.' " *Neder*, 527 U.S. at 8 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). Structural errors are said to "defy" harmless error review because they "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.' " *Neder*, 527 U.S. at 8-9 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)). Such errors include total denial of counsel, a biased trial judge, racial discrimination in jury selection, denial of self-representation at trial, and denial of a public trial. *Neder*, 527 U.S. at 8.

¶14 In *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993), the Court held that a defective reasonable doubt instruction was a structural error. The Court reasoned that because a defective reasonable doubt instruction "vitiates *all* the jury's findings," harmless error analysis cannot apply:

> The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the find-

---

The Court of Appeals can overrule a previous decision if it is 'demonstrably incorrect or harmful.' " (citation omitted) (quoting *King v. W. United Assurance Co.*, 100 Wn. App. 556, 561, 997 P.2d 1007 (Division One case overruling its own precedent), *review denied*, 141 Wn.2d 1027 (2000)).

ings to support that verdict might be—would violate the jury-trial guarantee. . . .

. . . There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt—not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.

*Sullivan*, 508 U.S. at 279-80 (citations omitted); *see also Clark*, 478 U.S. at 578 ("Where [the jury trial] right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty.").

¶15 In *Neder*, the Court held that it is not a structural error for a to-convict instruction to omit an element of an offense. 527 U.S. at 9-10. The district court in *Neder* had removed from the jury's consideration an element of the charged crime that the district court believed was not a question for the jury to decide. The *Neder* Court rejected the argument that *Sullivan*'s analysis "applies with equal force where the constitutional error, as here, prevents the jury from rendering a 'complete verdict' on *every* element of the offense." 527 U.S. at 11. The Court limited *Sullivan* to only those cases where *all* of the jury's findings have been infected or vitiated. *Neder*, 527 U.S. at 10-14. The *Neder* Court then concluded that the lack of a jury finding on the omitted element was harmless beyond a reasonable doubt because the element was established by uncontroverted evidence. 527 U.S. at 18-20.

¶16 The Washington Supreme Court adopted the holding of *Neder* in *State v. Brown*, 147 Wn.2d 330, 340, 58 P.3d 889 (2002). After *Jackman*, the court reiterated its adherence to *Neder* in *State v. Hughes*, 154 Wn.2d 118, 147-48 & n.12, 110 P.3d 192 (2005), but concluded that the failure to submit an aggravating factor to the jury is not subject to harmless error analysis. The thrust of the harmless error analysis in *Hughes* was that an aggravating factor is a charge separate from the underlying offense, rather than one element of a greater offense submitted to the jury. 154 Wn.2d at 147-48.⁵ Thus, according to *Hughes, Sullivan* dictated that harmless error analysis does not apply because the jury has not rendered a verdict on that additional offense.

¶17 Washington applied principles used in *Neder* in the pre-*Neder* case of *State v. Deal*, 128 Wn.2d 693, 911 P.2d 996 (1996). In *Deal*, a defendant challenged an instruction that required the jury to presume one element of first degree burglary (intent to commit a crime) from proof of an unrelated element (unlawfully remaining in a building); once the unrelated element had been established, the defendant was required to disprove the presumed element. The *Deal* court concluded that the instruction relieved the State of its burden to prove criminal intent and that it violated the defendant's due process rights by impermissibly shifting the burden of proof. 128 Wn.2d at 701-03. Nonetheless, the *Deal* court concluded that the instructional error was harmless beyond a reasonable doubt. 128 Wn.2d at 703.

---

⁵ *But see Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("[T]he term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence; it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense."); *State v. Allen*, 359 N.C. 425, 466, 615 S.E.2d 256 (2005) (Martin, J., concurring in part and dissenting in part) (opining that *Hughes* relied on language "*specifically disavowed* in *Neder*" and that "*Hughes* appears to be an outlier among appellate court decisions addressing the *Blakely*[ *v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)]/harmless-error issue"). The United States Supreme Court recently granted certiorari to address whether *Blakely* errors are subject to harmless error analysis. *See State v. Recuenco*, 154 Wn.2d 156, 164, 110 P.3d 188, *cert. granted*, 126 S. Ct. 478 (2005).

¶18 Unlike the facts in *Sullivan* or *Neder*, Zimmerman's trial resulted in a guilty verdict with findings on all the elements of the crime at issue; no element was omitted from the jury's to-convict instruction. The jury was instructed to find Zimmerman guilty of first degree child molestation only if it found beyond a reasonable doubt that, inter alia, (1) "on or between June 1, 2001 and July 31, 2001, the defendant had sexual contact with J.C. (7/8/1990)," and (2) "J.C. was less than twelve years old at the time of the sexual contact and was not married to the defendant." CP at 32. While listing J.C.'s birth date infected an element of first degree child molestation by commenting on an issue of fact, this error did not "infect the entire trial process" or "vitiate all the jury's findings." It was still necessary for the jury to find that the defendant had sexual contact with J.C. and to determine the date of that contact in order to address whether J.C. was less than 12 years old at that time. As such, *Neder*, as adopted by *Brown*, instructs that the instructional error here is subject to harmless error review.

¶19 This conclusion also follows from our decision in *State v. Holt*, 56 Wn. App. 99, 783 P.2d 87 (1989), *review denied*, 114 Wn.2d 1022 (1990). There, the defendants were charged with promoting pornography, which required the State to prove that the material promoted involved "lewd matter." But the trial court's to-convict instruction read: " 'That on or about the 5th day of September, 1985, the defendant or an accomplice sold, exhibited, or displayed *lewd matter, to-wit: [title of allegedly obscene material].*' " *Holt*, 56 Wn. App. at 104 (alteration in original). We concluded that this instruction "could have been read as a direction, or as a comment by the court, that the material was in fact lewd." *Holt*, 56 Wn. App. at 105. Nevertheless, we affirmed the defendants' convictions, concluding that the constitutional error was harmless. We reaffirm *Holt* and now turn to determine whether the error here was harmless.

¶20 Because constitutional error is presumed prejudicial, the State bears the burden of proving that it was

harmless to include the victim's birth date in the to-convict instruction. *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996); *Holt*, 56 Wn. App. at 105. Constitutional error is harmless if " 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Brown*, 147 Wn.2d at 341 (quoting *Neder*, 527 U.S. at 15).[6]

¶21 The instructional error was clearly harmless here. J.C.'s date of birth was undisputed: J.C. testified that she was born on July 8, 1990; J.C.'s mother testified that J.C. was born shortly after her 16th birthday in June 1990; and defense witness Harvey testified that she thought J.C. turned 10 during the summer of the alleged molestation. And although Zimmerman denied molesting J.C., he was her biological father and he never disputed J.C.'s age at the time she alleged he molested her. The record reflects beyond a reasonable doubt that but for the instructional error, the jury would have still found that J.C. was less than 12 years old at the time of the sexual contact. Thus, Zimmerman is not entitled to have his conviction reversed.

CORROBORATION INSTRUCTION

¶22 Zimmerman also maintains that the trial court committed reversible error by instructing the jury, over his objection, that the testimony of an alleged child molestation victim need not be corroborated. We disagree.

¶23 As just discussed, it is improper for a judge to communicate to the jury an opinion as to the truth or value of witness testimony. *Lane*, 125 Wn.2d at 838. But an instruction that accurately states the applicable law is not

---

[6] We do not apply the uncontroverted evidence test here. That test derives from the harmless error test and applies only when an element is missing or misstated in a to-convict instruction. *Brown*, 147 Wn.2d at 341. When an element is missing or misstated, that error is harmless only when the element is undisputed. *Brown*, 147 Wn.2d at 341. But where, as here, a trial court comments on a factual matter that is relevant to an element, but not an element itself, the appropriate inquiry is not necessarily whether the factual matter is undisputed. For example, the trial court's comment here could have been harmless, even if J.C.'s birth date was disputed, if all parties agreed that J.C. was under 12 at the time of the alleged sexual contact.

a comment on the evidence. *State v. Ciskie*, 110 Wn.2d 263, 282-83, 751 P.2d 1165 (1988). Here, the trial court's instruction mirrored RCW 9A.44.020(1), which provides: "In order to convict a person of any crime defined in [chapter 9A-.44 RCW, sex offenses] it shall not be necessary that the testimony of the alleged victim be corroborated." Thus, the instruction at issue accurately stated the law.

¶24 The trial court here stated that it was giving the instruction, over Zimmerman's objection, based on *State v. Malone*, 20 Wn. App. 712, 582 P.2d 883 (1978), *review denied*, 91 Wn.2d 1018 (1979). In *Malone*, a defendant contended that his rape conviction should be reversed because the trial court instructed the jury that " '[i]n order to convict the defendant of the crime of rape in any degree, it shall not be necessary that the testimony of the alleged victim be corroborated.' " 20 Wn. App. at 714. Division One ruled that the instruction was a correct statement of the law and was pertinent to the issues presented at the trial. It also found that the phrasing of the instruction did not convey an opinion on the alleged victim's credibility. The court therefore concluded that it was not a comment on the evidence. *Malone*, 20 Wn. App. at 714-15.

¶25 The Washington Supreme Court in *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949), also held that such an instruction was not an improper comment on the evidence. The instruction challenged in *Clayton* provided:

> "You are instructed that it is the law of this State that a person charged with attempting to carnally know a female child under the age of eighteen years may be convicted upon the uncorroborated testimony of the prosecutrix alone. That is, the question is distinctly one for the jury, and if you believe from the evidence and are satisfied beyond a reasonable doubt as to the guilt of the defendant, you will return a verdict of guilty, notwithstanding that there be no direct corroboration of her testimony as to the commission of the act."

32 Wn.2d at 572. The Supreme Court held that the trial court expressed no opinion as to the truth or falsity of the

testimony of the alleged victim or as to the weight that the court attached to her testimony, but properly submitted the questions involving credibility and weight of the evidence to the jury. *Clayton*, 32 Wn.2d at 573-74.

¶26 Zimmerman argues that this court should reject *Malone* because it has been overruled on other grounds and has not been cited for the proposition relevant here.[7] But even if this were a valid argument, it does not address the precedent in *Clayton*. Once the Washington Supreme Court has decided an issue of state law, its conclusion is binding on lower courts. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). Accordingly, we follow *Clayton*, and *Malone*, and hold that the instruction correctly stated the law and was not an improper comment on the evidence.

¶27 We observe, however, that the *Washington Pattern Criminal Jury Instructions* (WPIC) do not contain the challenged corroboration instruction. We also note that the Washington Supreme Court Committee on Jury Instructions recommends *against* such an instruction:

> The matter of corroboration is really a matter of sufficiency of the evidence. An instruction on this subject would be a negative instruction. The proving or disproving of such a charge is a factual problem, not a legal problem. Whether a jury can or should accept the uncorroborated testimony of the prosecuting witness or the uncorroborated testimony of the defendant is best left to argument of counsel.

11 WPIC § 45.02 cmt. at 561 (2d ed. 1994). Although we share the Committee's misgivings, we are bound by *Clayton*

---

[7] Zimmerman also argues that RCW 9A.44.020(1), upon which the challenged instruction is based, is a procedural or evidentiary rule and that "[i]t is error for a trial court to comment in front of the jury about the reasons for its evidentiary rulings." Br. of Appellant at 5-6. But in support of this argument, Zimmerman relies on *City of Seattle v. Arensmeyer*, 6 Wn. App. 116, 491 P.2d 1305 (1971), which does not support such a proposition. That case found an improper comment on the evidence where the trial court interrupted counsel in closing argument to say that counsel was mistaken as to the evidence. *Arensmeyer*, 6 Wn. App. at 120.

to hold that the giving of such an instruction is not reversible error.

¶28 Affirmed.

MORGAN, J. Pro Tem., concurs.

¶29 BRIDGEWATER, J. (dissenting) — I respectfully dissent. The majority follows *State v. Jackman*, 125 Wn. App. 552, 104 P.3d 686 (2004), *review granted*, 155 Wn.2d 1007 (2005), in holding that it was manifest error to include the victim's date of birth in jury instructions when the victim's age is an element of the offense, but it holds that that error is subject to a constitutional harmless error test. This holding is in direct conflict with our previous holding in *Jackman*. I continue to believe that this comment is tantamount to directing a verdict on that element of the offense and that it infects the entire trial process. That would render it a structural error, not subject to a harmless error analysis. The rationale is adequately set forth in *Jackman* and need not be repeated here. I would reverse the conviction.

Petition for review granted and case remanded to the Court of Appeals at 157 Wn.2d 1012 (2006).