# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50083-3-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| MICHAEL W. ARNOLD, | |
| Appellant. | |

BJORGEN, J. — Michael W. Arnold appeals his convictions on two counts of child molestation.

He argues that (1) he was denied his state and federal constitutional right to a fair jury trial and due process of the law by the improper admission of expert testimony, (2) the State committed prosecutorial misconduct during closing argument based on the presentation of a false choice, (3) the trial court improperly commented on the evidence by allowing the State's non-corroboration jury instruction, and (4) the cumulative effect of the errors deprived him of a fair trial. Arnold also requests a ruling on appellate costs.

We affirm the superior court.

FACTS

The Arnold family consists of 11 siblings, and Arnold is the second oldest. His sisters, S.A. and C.A., are approximately 10 and 12 years younger than him, respectively.[1, 2] S.A. testified that when she was about 4 or 5 years old, Arnold molested her three times as she slept. C.A. testified that she was probably between the age of 3 and 5 when Arnold molested her and described at least two incidents of molestation.

When C.A. was about 8 or 9 years old, she told S.A. that Arnold had done something to her. S.A. told her something had also happened to her. Although C.A. did not specifically describe what happened, S.A. testified she knew that C.A. had been molested based on her similar experience with Arnold.

In 2014, S.A. and C.A. both lived with their cousin, Jodie Holman. C.A. was about 15 years old at the time. C.A. told Holman about the alleged molestation, and Holman convinced C.A. to tell her parents and the police. Approximately a week and half later, S.A. also told Holman that Arnold had molested her. The police interviewed C.A. in November 2014 and S.A. in December 2014, and again in December 2015.

The State charged Arnold with six counts of first degree child molestation with domestic violence enhancements. On December 7, 2016, Arnold's case went to trial. Both S.A. and C.A. testified at trial. The State also called Keri Arnold,[3] a forensic child interviewer from the Pierce County Prosecutor's Office, to provide expert testimony on the subject of delayed disclosure,

---

[1] At trial, Arnold was 30 years old; S.A. was 20 years old; and C.A. was 18 years old.

[2] *See* General Orders of Division II, 2011-1 *In Re The Use of Initials Or Pseudonyms For Child Witness In Sex Crime Cases*.

[3] Keri Arnold is unrelated to Arnold. Because they share the same last name, we use her first name for clarity. No disrespect is intended.

among other matters. In the course of trial, the State amended the charges to five counts of first degree child molestation. During closing argument, the State used a PowerPoint presentation to buttress its argument that there were only two possibilities in determining the outcome of the case: (1) S.A. and C.A. are telling the truth or (2) S.A. and C.A. made it up on their own. The defense did not object.

After closing arguments, the judge proceeded to the jury instructions. Defense counsel objected to the State's proposed instruction that the testimony of an alleged child molestation victim need not be corroborated. Defense counsel argued that the jury had already been adequately instructed, the proposed instruction was inappropriate, and that this particular instruction placed undue emphasis on the fact that corroboration is not required and improperly highlighted that an alleged victim's testimony alone is enough for conviction. The trial court allowed the State's proposed jury instruction.

On December 16, 2016, a jury found Arnold guilty on counts IV and V, related to the molestation of C.A. However, the jury was unable to reach a verdict on counts I, II, and III, related to the molestation of S.A. Counts I, II, and III were later amended to third degree assault as part of an agreed resolution to which Arnold pled guilty.

Arnold appeals.

ANALYSIS

I. OPINION TESTIMONY

Arnold argues that he was denied his state and federal constitutional right to a fair jury trial and due process of the law by the improper admission of expert testimony. We disagree.

A.      Legal Principles

In general, appellate courts will not consider issues raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); *see* RAP 2.5(a). However, a party may raise an error for the first time on appeal if it is a manifest error affecting a constitutional right. *Id*. at 926. The defendant must show the constitutional error actually affected his rights at trial, thereby demonstrating the actual prejudice that makes an error "manifest" and allows review. *Id*. at 926-27.

To demonstrate actual prejudice, the appellant must make a plausible showing that the asserted error had practical and identifiable consequences in the trial of the case. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009), *as corrected* (Jan. 21, 2010). Our Supreme Court has made clear that "the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." *Id*. at 99-100. Absent such a showing, a party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

It is generally improper for a witness to offer testimony concerning the credibility of another witness. *See State v. Demery*, 144 Wn.2d 753, 758-59, 30 P.3d 1278 (2001). Such testimony is unfairly prejudicial to a defendant and invades the exclusive province of the jury. *Id*. at 759. However, the fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt. *City of Seattle v. Heatley*, 70 Wn. App. 573, 578-79, 854 P.2d 658 (1993).

An explicit or "nearly explicit" opinion on the defendant's guilt or a victim's credibility can constitute manifest error. *Kirkman*, 159 Wn.2d at 936. Testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury,

and is based on inferences from the evidence is not improper opinion testimony. *Heatley*, 70 Wn. App. at 578.

B.      Arnold's Challenge Not Preserved for Appeal

Arnold argues that Keri, the child interviewer from the Pierce County Prosecutor's Office, provided improper opinion testimony. Specifically, Arnold claims that the following testimony provided an improper opinion: (1) that 95 percent of cases involving sexual abuse involve delayed disclosure, (2) that the closer the relationship between the perpetrator and victim, the longer the delay, and (3) that the reasons for delay in reporting in cases involving family relationships are fear of the perpetrator, fear for the family unit, or the victim's fear for him or herself.

The State points out that Arnold failed to object to this testimony at trial. However, because an opinion regarding the defendant's guilt or a victim's credibility can infringe on a defendant's constitutional rights, a party can raise this error for the first time on appeal if the error is manifest. *Kirkman*, 159 Wn.2d at 926; RAP 2.5(a)(3). We turn, then, to whether the claimed error is manifest under *O'Hara* and *Kirkman.*

Arnold argues that Keri's testimony about delayed disclosure was not shown to be based on any legitimate scientific theory or meaningful empirical data and improperly vouched for the credibility of S.A. and C.A. Specifically, Arnold points to Keri's testimony explaining her experience with delayed disclosure. Keri testified, in pertinent part, as follows:

> [State]:           Are you familiar with delayed disclosure? Is that a specific topic?
>
> [Keri]:            I can't say that I've had a training specifically just on delayed disclosure, but it is a topic that comes up in a lot of the conferences and trainings that I've attended as well as it's something that is discussed just even in the interviewing protocols themselves.

[State]:          Is it something you've experienced in your 16 years as a child interviewer?

[Keri]:           Or 13 years as a child interviewer.

[State]:          Oh, I'm sorry.  Thank you for correcting me.

[Keri]:           Yes, I have experienced that a great deal.

[State]:          Can you please explain to the jury what delayed disclosure is?

. . . .

[Keri]:           *The majority of the interviews that I do are in sexual abuse cases or involve sexual abuse allegations, and I couldn't give you an exact number but I can tell you it's at least 95 or more percent of cases where there is a delay.  It's frequently a delay of at least days, and it's generally weeks, months or years.*  Most frequently, it's a delay of months or years from when the alleged abuse began to when the disclosure has taken place.

[State]:          Does the relationship between the alleged perpetrator and alleged victim have an impact on that, in your experience?

[Keri]:           Yes.

[State]:          And what is that impact?

[Keri]:           Frequently, children would report fear motivations for why they delayed disclosing.  *Oftentimes, the closer the relationship to the alleged perpetrator, so if it's a close family member, close family friend, somebody that is very connected to them and to their family, they are more likely to delay their disclosure.  They often report fear-motivated reasons* such as fear of what's going to happen to the alleged perpetrator, fear of what's going to happen to their family if this is, say, a parent or stepparent or, you know, someone who's a primary provider for the family.  They have fears of what's going to happen to their family, if they're going to lose their home, you know, things like that.  Fear of what's going to happen to them, fear of being believed even because this is somebody who is a close family member or fixture in their family.

6

Verbatim Report of Proceedings (VRP) (Vol. V) at 243-45 (emphasis added).

Arnold primarily relies on *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987) to support his argument. In *Black*, an expert witness testified about a profile for rape victims, known as "rape trauma syndrome," and testified that the victim in that case fit the profile. *Id.* at 340. Our Supreme Court held that testimony that the victim fit the profile invaded the province of the jury and, therefore, constituted improper opinion testimony. *Id.* at 348-50. Still, we distinguish *Black* because Keri did not express any opinion as to whether S.A. and C.A. fit the profile of a molestation victim, whereas the expert in *Black* directly commented that the victim fit the profile of a rape victim.

In this case, Keri did not state any opinion about Arnold's guilt or S.A.'s and C.A.'s veracity; in fact, Keri testified she had never met Arnold, S.A., or C.A. Instead, Keri testified about her qualifications as an expert and the nature of and reasons for delayed disclosure. She testified she had experience with the subject of delayed disclosure, experience she gleaned over the course of her 13 year career as a child interviewer.[4] She also testified about the difference between episodic memory and script memory. When read in context, Keri's testimony clearly shows that she based any opinion she had regarding delayed disclosure generally on her experience working as a child interviewer. Keri did not provide any opinion as to the delayed disclosure at issue in this case.

As noted, testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence, is not improper opinion testimony. *Heatley*, 70 Wn. App. at 578. Keri's testimony

---

[4] When asked what she does as a child interviewer, Keri testified that she "conduct[s] forensic interviews of children ages three through 15 who are alleged to be a victim or witness to violent crimes." VRP (Vol. V) at 240.

was not a direct comment on the defendant's guilt or the veracity of a witness. The jury could make inferences regarding delayed disclosure and its application to the facts of this case. The jury also could make inferences regarding whether S.A.'s and C.A.'s testimony comprised episodic or script memory. Thus, Keri's testimony helped the jury understand these general ideas regarding sexual abuse and their application to the facts of the case. The fact that Keri's testimony was based on her general experience, not on inferences from the facts of this case, distances even more her testimony from that of an opinion on guilt or veracity.

For these reasons, Arnold has not shown a manifest error regarding this testimony. Under *O'Hara*, *Kirkman*, and RAP 2.5(a), he has not preserved this claim of error for appeal.

## II. PROSECUTORIAL MISCONDUCT

Arnold next argues that the State committed prosecutorial misconduct during closing arguments. We disagree.

A.    <u>Legal Principles</u>

We review allegations of prosecutorial misconduct under an abuse of discretion standard. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial to the defendant's right to a fair trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). If a defendant establishes the prosecutor's conduct was improper, we will then determine whether the defendant was prejudiced. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Prejudice is established only if there is a substantial likelihood that the instances of misconduct affected the jury's verdict. *Id.* at 760.

Where, as here, a defendant fails to object to alleged prosecutorial misconduct, he is deemed to have waived any error unless he shows the misconduct "was so flagrant and ill

intentioned that an instruction could not have cured the resulting prejudice." *Id*. at 760-61. To meet this heightened standard, the defendant must show that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. *Id*.

We accord a prosecutor wide latitude to argue reasonable inferences from facts in evidence. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). When analyzing prejudice, we do not look at the comment in isolation, but in the context of the entire case, including the arguments, the issues in the case, the evidence, and the instructions given to the jury. *Thorgerson*, 172 Wn.2d at 443.

B.      False Choice

In closing argument, the prosecutor told the jury that, in the State's view, there were only two possibilities in determining the outcome of the case:  (1) S.A. and C.A. are telling the truth or (2) S.A. and C.A. made it up on their own. Arnold urges that this argument impermissibly suggested that the jury should only acquit if it determined the State's witnesses were lying.

As a threshold matter, Arnold failed to object after the prosecutor presented the challenged argument at trial. Therefore, under *Emery*, 174 Wn.2d at 760-61, Arnold must show that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict.

We begin by examining whether the prosecutor's conduct was improper. *Id*. at 760. Arnold characterizes the impropriety as the presentation of a false choice, which misstates the burden of proof, as well as the jury's role, by misleading the jury into thinking that acquittal requires the conclusion that the prosecution's witnesses are lying. Arnold primarily relies on

9

*State v. Fleming*, 83 Wn. App. 209, 921 P.2d 1076 (1996) and *State v. Johnson*, 158 Wn. App.

677, 243 P.3d 936 (2010) in support of his argument.

*Fleming* and *Johnson*, however, may be readily distinguished from Arnold's case. In

*Fleming*, the prosecutor explicitly told the jury that they must disbelieve the State's witnesses in

order to acquit the defendant, and, here, no such statement was made. 83 Wn. App. at 213-16.

In *Johnson*, the defendant argued that the prosecutor's statements required the jury to disbelieve

his testimony in order to acquit. 158 Wn. App. at 683. However, the court concluded that the

prosecutor's remarks provided an accurate statement of the law and, therefore, were not

improper. *Id.* at 683-84.

> In the case before us, the prosecutor argued, in pertinent part, as follows:

> [T]here's two possibilities, ultimately. One, they're telling the truth, or two, they're making this whole thing up. The State submits to you that they're telling the truth and that they have no reason to lie about this. Again, that goes to credibility, and I'll get into that a little bit more here in a second, but the evidence that you have that these kids are telling the truth.

VRP (Vol. V) at 294. The prosecutor reflected this argument with a number of PowerPoint

slides. One slide read,

> Possibilities

> 1. S.A. and C.A. are telling the truth

> 2. S.A. and C.A. made it up on their own

CP at 85. A few slides later, the State used another slide that read,

> The only conclusion supported by the
> EVIDENCE is that they are telling
> the TRUTH
> about being touched (S.A.) or
> touching him (C.A.)

CP at 93.

The two "possibilities" presented by this argument, viewed alone, can logically imply that to acquit, the jury must believe that S.A. and C.A. made it up. This message would improperly shift the burden of proof to Arnold. However, in its context the choice posed in the prosecutor's argument reflected the nature of the jury's determination as one based on credibility. The jury needed to either believe S.A. and C.A. or believe Arnold. That determination, in turn, controlled its ultimate decision. Read in context, the prosecutor's statements are more accurately described as characterizing the case as hinging on credibility and arguing that the evidence supports S.A. and C.A., which the prosecutor has wide latitude to do in closing argument. *See State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).

Although Arnold did not cite *State v. Miles*, 139 Wn. App. 879, 162 P.3d 1169 (2007), that decision must be considered. In *Miles*, the prosecutor told the jury that because the defense and the State had presented two conflicting versions of events "if one is true, the other cannot be" and "in this case you have no choice because you have two conflicting versions of events. One is not being candid with you." *Id.* at 889-90. We held that the prosecutor's argument constituted misconduct because it presented the jurors with a false choice: they could find the defendant not guilty only if they believed his evidence. *Id*. at 890. We reasoned that the jury did not have to believe the defendant to acquit him; it "had only to entertain a reasonable doubt as to the State's case." *Id*.

The choice posed by the prosecutor in *Miles* was different than that posed here. In *Miles*, the jury was told it must believe either the defense witnesses or the State's witnesses, but not both. This improperly precluded the middle ground of reasonable doubt and shifted the burden to the defendant. In the present case, the State argued instead that S.A.'s and C.A.'s credibility should be central to the jury's consideration of the case and that the jury should believe them.

This argument implied that if the jurors believed S.A. and C.A., they should convict. It also implied that if they disbelieved S.A. and C.A., they should acquit. This argument, though, did not imply that disbelieving S.A. and C.A. would be the only way for the jury to find reasonable doubt. The prosecutor's argument did not imply what the jury should do if it had a reasonable doubt about S.A.'s and C.A.'s testimony.

In sum, the prosecutor's closing argument and PowerPoint slides did not tell the jury that they must disbelieve S.A. and C.A. in order to acquit Arnold. Rather, the State's argument was that the case depended on credibility and that the jury should believe S.A. and C.A. This argument is not improper. With that, Arnold has not shown prosecutorial misconduct.

### III. JURY INSTRUCTION

Arnold maintains that the trial court improperly commented on the evidence by instructing the jury, over his objection, that the testimony of an alleged child molestation victim need not be corroborated. We disagree.

A.      Standard of Review

We review de novo whether a jury instruction is legally correct. *State v. Chenoweth*, 188 Wn. App. 521, 535, 354 P.3d 13 (2015). A jury instruction is not an impermissible comment on the evidence when sufficient evidence supports it and the instruction is an accurate statement of the law. *Id*.

B.      Non-corroboration Instruction

Arnold challenges the following jury instruction as an impermissible comment on the evidence:

> In order to convict a person of child molestation in the first degree, as defined in these instructions, it shall not be necessary that the testimony of the alleged victim be corroborated. The jury is to decide all questions of witness credibility.

12

CP at 127.

The State points out that the instruction is based on RCW 9A.44.020(1), which states, "In order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated." The instruction provided an accurate statement of the law. Further, Arnold concedes this instruction has been upheld as not constituting a comment on the evidence. E.g., *State v. Clayton*, 32 Wn.2d 571, 202 P.2d 922 (1949); *State v. Zimmerman*, 130 Wn. App. 170, 180-83, 121 P.3d 1216 (2005); *see also State v. Malone*, 20 Wn. App. 712, 714, 582 P.2d 883 (1978); *State v. Johnson*, 152 Wn. App. 924, 936, 219 P.3d 958 (2009); *Chenoweth*, 188 Wn. App. at 538.

Under both the general principles just noted and the decision in *Clayton*, 32 Wn.2d 571, we hold that the jury instruction does not constitute an impermissible comment on the evidence.

IV. CUMULATIVE ERROR

Arnold argues that the cumulative effect of the errors he has identified deprived him of a fair trial. We disagree.

Under the cumulative error doctrine, a reviewing court may reverse a defendant's conviction when the combined effect of trial errors denied him a fair trial, even if each error alone would be harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). The doctrine does not apply where the errors are few and have little or no effect on the trial's outcome. *Id*. at 279. Because we do not reach the challenge to Keri's testimony and find no error otherwise, Arnold's claim of cumulative error must fail.

V. APPELLATE COSTS

Arnold requests a ruling on appellate costs. The State has not indicated whether it intends to seek costs. Under RAP 14.2, if the State decides to file a cost bill, Arnold may challenge that on the basis of inability to pay. We therefore decline to reach this issue.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, P.J.

Sutton, J.