93 P.3d 133 (2004)
152 Wash.2d 22
STATE of Washington, Respondent,
v.
Pamela Jean LORENZ, Petitioner.
No. 74061-5.
Supreme Court of Washington, En Banc.
Argued May 18, 2004.
Decided July 1, 2004.
*134 Sharon Jean Blackford, Seattle, for Petitioner.
Ian Michael Goodhew, Dennis John McCurdy, King Co Pros Ofc, Pros Attorneys Ofc/Appellate Unit, for Respondent.
IRELAND, J.
In this case we consider whether the trial court erred when it refused to include in the "to convict" instruction a finding of sexual gratification for the crime of first degree child molestation. We also consider whether the trial court erred when it admitted petitioner Pamela Jean Lorenz's written statement after ruling that Miranda[1] rights were not required because Lorenz was not in custody. We hold that sexual gratification is properly included in the separate instruction defining "sexual contact" and is not an essential element of first degree child molestation. Further, we hold that Lorenz was not in custody when her written statement was made and no Miranda warning was required. We affirm Lorenz's conviction of first degree child molestation.

FACTS
The jury convicted Lorenz of committing the following crimes against her five year-old daughter, C.: first degree child rape, first degree child molestation, sexual exploitation of a minor; and conspiracy to commit rape, molestation, and, exploitation of a child. The jury convicted Lorenz of committing the following crimes against a 15 year-old female, Melita: third degree child rape, sexual exploitation of a minor, and conspiracy to commit crimes of dealing in depictions of minors engaged in sexually explicit conduct and promoting juvenile prostitution. Only the child molestation charge is at issue in this proceeding.
South Carolina Detective Jeff Vertisch posed as an internet distributor of child pornography while he conducted an undercover investigation on internet child pornography. A Washington resident communicated with Vertisch over a series of e-mails about the purchase and distribution of child pornography. Eventually, the Washington resident offered Vertisch sex with his child escorts in exchange for Vertisch's marketing of his child pornography collection. The Washington resident stated, in an e-mail to Vertisch, that he operated a child "escort service" with escorts ranging from 5 to 15 years old; that he had a 15 year old escort named Mel; and soon his 5 year old would be ready for "oral-clients." One of the e-mails sent to Vertisch included an image of an unidentified child.
Vertisch passed the information along to the Federal Bureau of Investigation's Seattle office (FBI). FBI Special Agent Bruce Bennett shared the information with the Puget Sound Internet Crimes Against Children Task Force (task force).[2] Seattle Police Detective *135 Shannon Anderson headed the investigation. The task force tracked the IP (internet protocol) address that sent the e-mail to Merle "Rick" Holdren, a Federal Way resident.[3]
The task force contacted the Department of Social and Health Services and learned that Holdren lived at the address with a woman named Pamela Lorenz. Lorenz has two children, C., age five, and L., age nine. The task force also learned that Holdren had two active felony warrants. Based on the information obtained from Vertisch and because C.'s age matched the age of one of the child "escorts" described in the e-mails, a search warrant was obtained to search the premises.
On October 30, 2000, Detective Anderson, Port of Seattle Detective Roling, Special Agent Bennett and other members of the task force served the search warrant on Lorenz's trailer home. The task force members entered a trailer in complete disarray. Holdren was arrested for the outstanding warrants. Holdren was advised of his Miranda rights. Lorenz was also arrested for a drug violation when detectives found her trying to hide methamphetamine under her bed. C. and L. were taken by officers to the prosecutor's office.
After Holdren and Lorenz were taken into custody, the task force searched the trailer. Some of the items found were: (1) books on pedophilia and incest (2) child pornography magazines, (3) several cameras and undeveloped film rolls. The task force also found a document advertising a service entitled "Ultimate Fantasies" which was signed, "Sincerely, Rick & Pam, Service Representatives." In the computer desk the task force found more incest and pedophilia literature. The task force seized the computer found in the trailer. The computer contained approximately 400 sexually explicit images of children, videos of children engaged in sex acts, and numerous articles on pedophilia, incest, and sexual activity.
While the search of the trailer took place, C. was interviewed by Nicole Farrell, a child interview specialist, at the King County Prosecutor's office. C. told investigators she had participated in sex with Lorenz (her mother), and Holdren. C. stated, "we went in to do sex with each other" and "we started doing sex with Mom [Lorenz] and Rick [Holdren], all three of us."
The task force developed film seized from Lorenz's trailer. There were several shots of Lorenz and another young woman having sex, and a shot of a young child holding a man's penis. The child in the photograph was wearing a distinctive shirt, and the man had a distinctive scar. The task force believed that C., Lorenz's daughter, was the child in the picture.
Detective Anderson applied for a second search warrant, hoping to find the distinctive shirt depicted in one of the pictures. On November 3, 2000, the task force returned to the trailer with the second search warrant. Lorenz, who had been released on the drug charges, answered the task force's knock at the front door. Seattle Police Detective Nate Janes asked Lorenz to step out onto the front porch. Janes did not arrest Lorenz and placed only one restriction on Lorenz  that she was not to reenter the trailer while the detectives searched for the shirt.
During the search, Special Agent Bennett and Detective Roling questioned Lorenz out on the porch. Bennett informed Lorenz that she was not under arrest and was free to leave any time, but was not allowed inside the trailer while the search took place. Lorenz claimed that the officers told her "sit here" referring to a chair they placed on the porch. Lorenz told officers that the 15 year old in the photographs was her neighbor and that she took the photograph of C. holding Holdren's penis. Lorenz signed a written *136 statement acknowledging that she was not under arrest and was free to leave at any time; it reads, in relevant part, "I am fully aware that I am not under arrest and am free to leave at any time. [ ] I am also advised that I can stop the following written statement at any time." Clerk's Papers (CP) 42. Lorenz's statement explains that Lorenz educated C. about sex by letting her watch Holdren masturbate (on numerous occasions) and also showing her how to masturbate.
The State charged both Holdren and Lorenz with first degree child rape, first degree child molestation, two counts of sexual exploitation of a minor, third degree rape of a child, conspiracy to commit rape, molestation, exploitation of a child, and conspiracy to distribute pornography. Lorenz and Holdren were tried separately.
Lorenz sought to exclude the statements she made during the November 3rd search, claiming that police did not provide her with a Miranda warning. Prior to trial, the trial court conducted a CrR 3.5 hearing to determine the admissibility of her written statement. At the CrR 3.5 hearing, Lorenz testified that one of the detectives told her that if she stopped before completing her written statement, she would be arrested for obstruction of justice. According to Lorenz, Agent Bennett told her he "was going to fuck me up one side and down the other and keep me from seeing my kids, and Mr. Holdren and I could be pen pals in prison for the next 20 years and I'd never see my kids again." CP 198-99. Lorenz also claimed that she asked the detectives whether or not she needed a lawyer. However, at the hearing, Special Agent Bennett denied making any such statements to Lorenz. Detective Roling, present during the interview and taking of the written statement, testified that he did not hear Special Agent Bennett make such statements to Lorenz.
The trial court determined that Lorenz's testimony was not credible because she admitted to lying several times during the course of the written statement, and because another detective present for nearly all the questioning testified that Special Agent Bennett made no threats. The trial court noted that Lorenz's written statement stated "[she had] not been threatened or promised with anything." It concluded that Lorenz's written statement was voluntary. Further, the trial court concluded that Lorenz's written statement was not a custodial interrogation because at all times as memorialized in her written statement, Lorenz was fully aware that she was not under arrest and was free to leave at any time. The trial court ruled Lorenz's written statement was admissible.
Lorenz proposed "to convict" jury instructions that included "sexual gratification" as an element of first degree child molestation.[4] The trial court declined Lorenz's proposal, and gave jury instruction nos. 10-12 patterned after 11 Washington Pattern Jury Instructions: Criminal 44.20-.21, at 544-45; 45.07, at 566 (2d ed.1994).
Jury instruction number 10 read, "A person commits the crime of child molestation in the first degree when that person has sexual contact with another person who is less than twelve years old and who is not married to the person and is at least thirty-six months older than the victim."
The portion of jury instruction number 11 in dispute reads:
To convict the defendant of the crime of child molestation in the first degree, as charged in Count Two, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or between September 1, 2000 to October 30, 2000, Pamela Jean Lorenz or an accomplice had sexual contact with C. Lorenz;
CP 84 (emphasis added). And jury instruction number 12 reads, "Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party or a third party." CP 85.
*137 The jury found Lorenz guilty of all seven counts. The trial court imposed a total sentence term of 318 months. The Court of Appeals affirmed Lorenz's conviction. Lorenz does not challenge the trial court's CrR 3.5 findings of fact. The matter is now before this court.

A. STANDARD OF REVIEW
Unchallenged CrR 3.5 findings are verities on appeal. State v. Broadaway, 133 Wash.2d 118, 131, 942 P.2d 363 (1997). Both the adequacy of a "to convict" instruction and whether an interrogation was custodial are reviewed de novo. State v. Deryke, 149 Wash.2d 906, 910, 73 P.3d 1000 (2003); Broadaway, 133 Wash.2d at 133, 942 P.2d 363.

B. ISSUES
1. Did the trial court instruct the jury on every element of the crime of first degree child molestation where the "to convict" instruction required a finding of "sexual contact?"
2. Was defendant's written statement, taken without Miranda warnings, properly admitted when the statement acknowledged that she was not in custody?

C. ANALYSIS
1. Did the trial court instruct the jury on every element of the crime of first degree child molestation where the "to convict" instructions required a finding of "sexual contact?"
Lorenz asserts that sexual gratification is an essential element of first degree child molestation. State v. Markle, 118 Wash.2d 424, 435, 823 P.2d 1101 (1992); State v. BJS, 72 Wash.App. 368, 372, 864 P.2d 432 (1994); State v. Brown, 78 Wash.App. 891, 895, 899 P.2d 34 (1995); State v. Jones, 71 Wash.App. 798, 825, 863 P.2d 85 (1993). Lorenz seeks to vacate her first degree child molestation conviction on the grounds that the trial court refused to include sexual gratification as an element in the "to convict" instruction.
The State argues the trial court provided the jury with a "to convict" instruction that contained every essential element of the crime of first degree child molestation, including the element of "sexual contact." According to the State, sexual gratification is not an essential element of first degree child molestation but a definitional term included in the definitions section of the sex offenses statute, RCW 9A.44.010(2), to clarify the meaning of sexual contact.
"`"[T]o convict" instructions must contain all of the elements of the crime because it serves as a "yardstick" by which the jury measures the evidence to determine guilt or innocence.'" Deryke, 149 Wash.2d at 910, 73 P.3d 1000. The missing element supplied by other instructions does not cure the defect. Id. (citing State v. Smith, 131 Wash.2d 258, 263, 930 P.2d 917 (1997)). Omission of an element relieves the State of its burden to prove every essential element beyond a reasonable doubt. Smith, 131 Wash.2d at 265, 930 P.2d 917.
A person is guilty of first degree child molestation "when the person has [ ] sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). In a separate section, titled "Definitions," the legislature defined "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).
The decisions of two divisions of the Court of Appeals are seemingly in conflict with each other. Division Three of the Court of Appeals held in a juvenile proceeding that sexual gratification is a crucial element to the crime of first degree child molestation which must be set forth in the findings of fact by the judge. BJS, 72 Wash.App. at 372, 864 P.2d 432. As set forth in BJS, JuCR 7.11(d) provides:
"Written Findings and Conclusions on Appeal. The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court *138 relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal."
BJS, 72 Wash.App. at 369-70, 864 P.2d 432 (quoting JuCR 7.11(d)). Juvenile proceedings are always tried to the court; no jury instructions are required. In order to allow a reviewing court to ascertain whether the court has followed the law, JuCR 7.11(d) requires that the findings "state the ultimate facts as to each element of the crime" (emphasis added). The BJS court erred in conflating an ultimate fact (sexual gratification) with an essential element (sexual contact). The result of BJS is not in error as it was appropriate to require the finding of sexual gratification because it was an ultimate fact as to the essential element of sexual contact. Only the language of BJS listing sexual gratification as an essential element is in error.
Division One of the Court of Appeals held that sexual gratification is not a crucial element rather it is a definitional term that clarifies the meaning of "sexual contact". State v. T.E.H., 91 Wash.App. 908, 915, 960 P.2d 441 (1998). T.E.H. claimed that the juvenile court failed to comply with JuCR 7.11 because "the findings and conclusions contain[ed] no finding of the ultimate facts relied upon by the juvenile court" to support the conclusion that T.E.H. acted for the purposes of sexual gratification. T.E.H., 91 Wash.App. at 915, 960 P.2d 441. The court reasoned that the crime of child molestation requires a showing of "sexual gratification" because without such a showing, the touching may be inadvertent. The court concluded that there was sufficient evidence to support a finding of sexual gratification, "[T.E.H.] forced [victim] to disrobe and intentionally molested him with his hands and his body, including his penis." Id. at 916, 960 P.2d 441. The court affirmed the juvenile court's decision.
Lorenz also relies on Markle, where we held that "[t]he requirement that an offender knowingly act for the purpose of gratifying sexual desire, while an element of indecent liberties, is not a necessary element of either of the former offenses of first or second degree statutory rape." Markle, 118 Wash.2d at 435, 823 P.2d 1101 (construing Former RCW 9A.44.100(2)(a) [1988]). Lorenz, therefore, concludes that "[b]ecause this Court has construed [Former RCW 9A.44.100(2)], sexual gratification to be an element of indecent liberties, consistency dictates that this Court should `again construe the same statute "as an element of child molestation."' "Appellant's Supplemental Brief at 12.
However, Markle does not support Lorenz's contention. The crime at issue in Markle was not child molestation, rather it was indecent liberties. The statutory language at issue in the former indecent liberties statute reads in pertinent part, "[a] person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another." Former RCW 9A.44.100(1) (1998) (emphasis added).[5] We held that the former indecent liberties statute required a mental element and could not be a lesser included offense of first or second degree statutory rape, since the statute required "knowingly" committed "sexual contact." However, unlike the former indecent liberties statute, the legislature did not include "knowingly" in the first degree child molestation statute. Thus while it was a requirement that an offender act knowingly for the purpose of gratifying sexual desire for indecent liberties, we hold that it is not a requirement for first degree child molestation.
The remaining cases on which Lorenz relies, Brown, State v. Saiz, 63 Wash.App. 1, 816 P.2d 92 (1991), and Jones, do not deal squarely with the issue of whether the definition of sexual contact must be contained in the "to convict" instruction. Rather these cases repeatedly concluded that "sexual contact" is not an essential element of rape. In Brown, the Court of Appeals held that the trial court did not err when it failed to instruct the jury on the definition of sexual contact for the crime of second degree rape. *139 Brown, 78 Wash.App. at 896, 899 P.2d 34. In State v. Saiz, 63 Wash.App. at 5, 816 P.2d 92, the court concluded that child molestation was not a lesser included offense of child rape as the court noted that rape of a child involves sexual intercourse, while child molestation involves "sexual contact." In Jones, the court held that the failure to prove a unanimity instruction did not violate the prohibition against double jeopardy or the doctrine of merger because the two offenses which the defendant was charged with, child molestation and first degree rape of a child, were legally and factually distinct. Jones, 71 Wash.App. at 826, 863 P.2d 85. These cases correctly concluded that child molestation is not a lesser included offense of rape because child molestation requires "sexual contact" while rape requires "sexual intercourse."
The plain meaning rule requires courts to derive the meaning of the statute from the "wording of the statute itself." Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). Only if the statute is determined to be ambiguous, will a court look to the legislative intent in enacting it. State v. Thorne, 129 Wash.2d 736, 763, 921 P.2d 514 (1996).
RCW 9A.44.083 unambiguously states that a person is guilty of the crime of first degree of child molestation if: (1) the perpetrator has sexual contact, (2) with victim who is less than twelve years old, and (3) perpetrator is at least thirty six months older than the victim. The plain meaning rule applies. The legislature codified "sexual contact" as an essential element of first degree child molestation. The definition of "sexual contact" is in RCW 9A.44.010(2), a wholly separate section of chapter 9A.44 RCW, entitled "Definitions." Had the legislature intended a term to serve as an element of the crime, it would have placed "for the purposes of sexual gratification" in RCW 9A.44.083. Rather the definition of "sexual contact" clarifies the meaning such that it excludes inadvertent touching or contact from being a crime. State v. Gurrola, 69 Wash.App. 152, 157, 848 P.2d 199 (1993); Brown, 78 Wash.App. at 895, 899 P.2d 34. A plain reading of the statute favors a holding that "sexual gratification" is not an essential element to the crime of first degree child molestation but a definition clarifying the meaning of the essential element "sexual contact." On this basis, we hold that "sexual gratification" is not an essential element of first degree child molestation.
The State offers three additional reasons in support of the court holding that "sexual gratification" is not an essential element of first degree child molestation: First, the State asserts that courts have never required the words defining an element be included in the "to convict" instruction in place of the actual element itself. See State v. Laico, 97 Wash.App. 759, 764, 987 P.2d 638 (1999) (definition of "great bodily harm" does not add an element to the assault statute, rather it is intended to provide understanding); State v. Marko, 107 Wash.App. 215, 219-20, 27 P.3d 228 (2001) (definition of threat does not create additional elements rather it merely defines an element); State v. Strohm, 75 Wash.App. 301, 308-09, 879 P.2d 962 (1994) (definitional term does not add elements to the criminal statute).
Second, according to the State, such a holding would create poor policy because the inclusion of definitions would result in lengthy "to convict" instructions and potentially confuse the jury.
Lorenz's argument that sexual gratification is an element is misplaced as applied to her case because she was convicted under an accomplice liability theory. Lorenz's proposed jury instructions would have required a jury to find that she was sexually gratified when she took the photograph of C., her five year-old daughter, holding Holdren's erect penis. However, as the State's third additional reason points out, the State proceeded on an accomplice liability theory that required the State show only that Lorenz knowingly assisted Holdren when he touched C. for his sexual gratification. An accomplice and principal need not share the same mental state. State v. Sweet, 138 Wash.2d 466, 479, 980 P.2d 1223 (1999).
Also, Lorenz's proposed jury instructions would have required the jury to find that the touching was done for her sexual gratification. However, "sexual contact" also occurs when done for the purposes of a third party's, in this case Holdren's, sexual gratification. RCW 9A.44.010(2). Lorenz's jury instructions, had they been adopted would have been erroneous  allowing a conviction *140 only if the jury found that it was done for her sexual gratification when the statute clearly states that "sexual contact" includes for the purpose of a third party's sexual gratification. RCW 9A.44.010(2).
The State's argument is supported by authority. We hold that "sexual gratification" is not an essential element to the crime of first degree child molestation but a definitional term that clarifies the meaning of the essential element, "sexual contact." Thus, we affirm Lorenz's conviction of first degree child molestation.

2. Was defendant's written statement, taken without Miranda warnings, properly admitted when the statement acknowledged that she was not in custody?
Lorenz contends that the trial court erred in admitting her written statement because she was not given Miranda warnings prior to or during a five-hour interview with task force members when they searched her trailer on November 3, 2000. Lorenz claims that the written statement was made while she was in custody but does not challenge the trial court's CrR 3.5 findings of fact. Unchallenged findings of facts are verities on appeal. Broadaway, 118 Wash.2d at 131, 821 P.2d 44.
We review a trial court's custodial determination de novo. Broadaway, 133 Wash.2d at 131, 942 P.2d 363. Miranda warnings were designed to protect a defendant's right not to make incriminating statements while in police custody. State v. Harris, 106 Wash.2d 784, 789, 725 P.2d 975 (1986). Miranda warnings are required when an interrogation or interview is (a) custodial (b) interrogation (c) by a state agent. State v. Post, 118 Wash.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992).
"Custodial" refers to whether the defendant's movement was restricted at the time of questioning. State v. Sargent, 111 Wash.2d 641, 649, 762 P.2d 1127 (1988). An objective test is used to determine whether a defendant was in custody  whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest. Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); Post, 118 Wash.2d at 607, 826 P.2d 172 ("defendant must show some objective facts indicating his ... freedom of movement [or action] was restricted [or curtailed]").
Lorenz argues that following State v. Dictado, 102 Wash.2d 277, 687 P.2d 172 (1984), we should hold that she was under custodial interrogation at the time the written statement was made because the police had developed probable cause to arrest her for the crimes she was later charged, and had not properly given her Miranda warnings. However, this court explicitly rejected the Dictado approach in State v. Harris when this court adopted the U.S. Supreme Court's approach in Berkemer. Harris, 106 Wash.2d at 789-90, 725 P.2d 975; State v. Short, 113 Wash.2d 35, 41, 775 P.2d 458 (1989). It is irrelevant whether the officer's unstated plan was to take Lorenz into custody or that Lorenz was the focus of the police investigation. Beckwith v. United States, 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). It is irrelevant whether Lorenz was in a coercive environment at the time of the interview. Sargent, 111 Wash.2d at 649, 762 P.2d 1127. Thus it is, as the State contends, irrelevant whether the police had probable cause to arrest Lorenz (before or during the interview). Berkemer, 468 U.S. at 442, 104 S.Ct. 3138.
In order for there to be custody, a reasonable person in Lorenz's position would have to believe that he or she was in police custody with the loss of freedom associated with a formal arrest. But in this instance, the trial court correctly concluded that Lorenz was not in custody when the written statement was made. She was not permitted to enter the trailer while the task force searched the trailer, nonetheless she was not required to remain on the premises. Approximately four officers searched the trailer for evidence. Two officers interviewed Lorenz. Police officers explicitly advised Lorenz prior to interviewing her that she was not under arrest and was free to leave at any time. Lorenz explicitly acknowledged in the written statement that she was "fully aware that [she is] not under arrest and am free to leave at any time." Lorenz never asked to leave, never asked task force members to stop questioning her, and never asked for an attorney. Lorenz's circumstances regarding her written *141 statement at issue do not give rise to Miranda safeguards. We hold that under these circumstances the questioning was not custodial; a reasonable person under the circumstances being told by officers verbally and acknowledging in a written statement that she was free to leave would indeed believe she was not in custody. We affirm the trial court's decision to allow the written statement into evidence.

CONCLUSION
We hold that "sexual gratification" is not an essential element to the crime of first degree child molestation but a definitional term that clarifies the meaning of the essential element, "sexual contact." We hold that the trial court did not err when it admitted Lorenz's November 3, 2000 written statement because the statement was not obtained during a custodial interrogation. Therefore, we affirm Lorenz's conviction of first degree child molestation.
ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The Puget Sound Internet Crimes Against Children Task Force is a multi agency partnership of federal, state, and local agencies  including the FBI, U.S. Customs, and Seattle Police.
[3] IP stands for internet protocol, similar to that of phone numbers. The IP address is composed of a string of numbers. Every computer connected to the internet has a unique identifier called an IP address. Karen Webb, Comment, The "Appeal" of the Internet  Looking at the Uniform Domain Name Dispute Resolution Policy and How it Is Newly Influenced by the Anticybersquatting Consumer Protection Act, 43 SANTA CLARA L.REV. 1431, 1434 (2003).
[4] Lorenz's proposed jury instruction reads, "To convict the defendant, Pamela Lorenz, of the crime of child molestation in the first degree, the State must also prove that the touching was done for the sexual gratification of the defendant, Pamela Lorenz." State v. Lorenz, noted at 116 Wash.App. 1049, 2003 WL 1963282 (2003).
[5] "Sexual contact" was defined as "any touching of the sexual or other intimate parts of a person done for the purposes of gratifying sexual desire." Former RCW 9A.44.010(2).