**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53194-1-II |
| Respondent, | |
| v. | |
| WILLIE RODRIQUEZ GARZA, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Willie Rodriquez Garza appeals two convictions for first degree child molestation arising from incidents involving his granddaughter, IR. Garza also appeals the imposition of specific conditions of community custody.

Garza argues that the prosecutor's conceded misstatement of the evidence during closing argument was reversible misconduct and that there was insufficient evidence to support one of his convictions. Garza preserved a challenge to the noncorroboration jury instruction in the event the Washington Supreme Court reconsidered binding precedent on this issue. Garza also argues, and the State agrees, that four conditions of community custody were improperly imposed. Garza filed a statement of additional grounds for review (SAG) raising numerous additional issues.

We affirm Garza's convictions, and none of the issues raised in Garza's SAG merits reversal, but we remand for the trial court to strike the challenged conditions of community custody from Garza's judgment and sentence.

FACTS

I. Background

Between the ages of roughly 5 and 11, IR regularly spent time with Garza, her biological grandfather. Sometimes IR's family lived with Garza, and Garza would frequently babysit IR and her younger siblings.

In 2015, when IR was 10 years old, she began to refuse to go to Garza's home. Eventually, IR told her mother that she did not feel comfortable visiting Garza because "'he [kept] putting his hands on [her] in ways that he shouldn't and . . . being inappropriate.'" 3 Verbatim Report of Proceedings (VRP) at 285. IR's mother immediately cut off contact between Garza and her children.

In 2017, when IR was 12 years old, she went to see her school counselor and discussed feeling suicidal. IR told the school counselor that Garza had molested her. The counselor reported these allegations to the school resource officer, Child Protective Services, and IR's parents.

IR's parents then took her to Mary Bridge Children's Hospital, where she met with a social worker for a mental health evaluation, and IR told the social worker that her grandfather had molested her. The social worker reported these allegations to police.

During a forensic interview at the Children's Advocacy Center, IR described three instances of Garza inappropriately touching her. Detective Patricia Song observed this interview. Song then contacted Garza, interviewed him, and arrested him.[1]

---

[1] The parties stipulated that Garza's statements to Detective Song were given voluntarily and without coercion.

The State charged Garza with three counts of first degree child molestation based on three separate instances of inappropriate touching. The State accused Garza of using his position of trust to facilitate each count.

## II. TRIAL

A.    IR's Testimony

IR testified at trial. The first incident IR described, the basis for count I, happened early in the morning when the rest of her family was still asleep. IR testified, "[A]ll I remember was I was in his room, he was in his room. And my pants were on the floor, my underwear was off. He was touching me on my lower area." 3 VRP at 270. IR specified that at one point she was on Garza's bed, he was kissing her stomach and legs, and he was touching her legs, inner thighs, and vagina. IR recalled Garza hearing a noise and saying, "'Hurry up. Put your clothes on before your aunt or your mom comes and sees you.'" *Id*. Defense counsel cross-examined IR regarding inconsistent statements from prior interviews where she said that she was standing up with her underwear on. The State referred to this as the "Gig Harbor" incident. Suppl. Clerk's Papers (SCP) at 180.

The second incident IR described, the basis for count II, happened when she and Garza were the only two people at home. "I remember that we were sitting on the couch, there was nobody else home, the TV was on. And then somehow I was on his lap, he was kissing me and he was touching me inside my shirt." 3 VRP at 275. IR testified that her clothes were on, but Garza was kissing her neck and face and touching her chest underneath her shirt. She was not wearing a bra. The touching stopped when a neighbor knocked on the front door. The State referred to this as the "Town House" incident. SCP at 181.

3

The third incident IR described, the basis for count III, happened when she asked to use the computer in Garza's bedroom. She recalled "pictures of girls in their bikinis and models" near Garza's computer. 3 VRP at 279. IR told the jury, "I went in there and I asked him if I could go on the computer. And then what I remember is I ended up sitting on his lap after that and then he started putting his hands in my shirt." *Id*. IR testified that she "ended up just being on [Garza's] lap and then he ended up -- [she] was wearing a red shirt and he ended up having his hands underneath [her] shirt," but she could not recall details of what led up to that point. 3 VRP at 280. She testified that she was not wearing a bra. IR did not specifically testify that Garza touched her chest, nor did she testify that he kissed her during this incident. The touching stopped when IR's younger brother entered the room and asked her to play with Nerf guns. The State referred to this as the "Apartment Upstairs" incident. SCP at 182.

IR also testified that Garza would "constantly" touch her lower body from her waist down. 3 VRP at 281. IR did not describe a specific incident when this type of touching occurred and instead stated, "It happened a lot, like it was just a constant thing that would go on." 3 VRP at 282. Garza would touch her buttocks and inner thighs, "pinch [her] butt," and make "smart comments" to and about women that made IR uncomfortable. 3 VRP at 268. For example, Garza referenced the women pictured near his computer and told IR, "'One day you'll end up growing to be like them, huh, and take pictures like that.'" 3 VRP at 268-69.

Garza testified and denied that any of the three incidents described above occurred.

B.      Jury Instructions and Closing Argument

The jury was instructed on the elements of first degree child molestation, as well as the elements of the lesser included offense of fourth degree assault. The to convict instructions for the

three counts of first degree child molestation each explained that the State had to prove beyond a reasonable doubt that during the charging period, Garza had "sexual contact" with IR, "separate and distinct from the conduct alleged in [the other two counts];" that IR was less than 12 years old at the time and not married to Garza; that she was at least 36 months younger than Garza; and that the acts occurred in Washington. Clerk's Papers (CP) at 113, 118, 121. The trial court explained, "Sexual contact means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party." CP at 110.

The jury was also instructed that "[i]n order to convict a person of child molestation in the first degree, . . . it shall not be necessary that the testimony of the alleged victim be corroborated. The jury is to decide all questions of witness credibility." CP at 106. Defense counsel objected to this instruction.

With regard to the lawyers' arguments, the trial court instructed the jury that "[t]he lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits." CP at 102. The jury was told that they "must disregard any remark, statement, or argument that is not supported by the evidence." *Id.*

The trial court also reminded the jury that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." CP at 105. This was elaborated on in a later instruction: "The State alleges that the defendant committed acts of Child Molestation on multiple occasions. To convict the defendant on any count, . . . one particular act of Child Molestation must be proved for that count beyond a reasonable doubt, and you must unanimously agree . . . which act has been proved." CP at 112.

In his closing argument, the prosecutor described closing as the State's "opportunity . . . to take the facts of the case and apply it to the law." 5 VRP at 537. He then reviewed the evidence in support of each count charged. However, he misstated IR's testimony in support of count III. The prosecutor identified "[t]he third incident that supports [c]ount III" and then described this incident by saying that when IR sat on Garza's lap, he "start[ed] rubbing up underneath her shirt, kissing her in places that grandpas are not supposed to kiss their grandchildren, rubbing on her bare chest, [and] that she wasn't wearing a bra, because she wasn't old enough to be wearing a bra." 5 VRP at 545-46. Defense counsel did not object to this misstatement.

The jury was hung on count I, and the State later moved to dismiss this charge without prejudice. The jury found Garza guilty of counts II and III. The jury further found that Garza used his position of trust to facilitate the commission of counts II and III.

### III. SENTENCING

The trial court imposed a high end standard range minimum sentence of 89 months with a maximum of life and community custody for life.

During sentencing, the State requested both a psychosexual evaluation and a drug and alcohol evaluation. On the record, the trial court imposed a psychosexual evaluation but declined to impose a drug and alcohol evaluation, stating, "I'm not going to order a substance abuse evaluation. I don't think there's enough evidence in the record that I have, directly, that that's an issue for him." 6 VRP at 591-92. In Garza's judgment and sentence, the trial court specified that he should undergo a psychosexual evaluation and treatment and have no contact with minors or IR.

Garza's judgment and sentence also incorporates an appendix that includes additional conditions, which Garza did not object to during sentencing. These additional conditions prohibit Garza from possessing "pictures of any minors at all" and entering "drug areas as defined by court or [community corrections officer]." CP at 157. The appendix also includes checked boxes requiring Garza to undergo an alcohol and chemical dependency evaluation and a mental health evaluation.

Garza appeals his convictions and the imposition of these four conditions of community custody.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Garza argues that the prosecutor "misstated" and "misrepresented" the evidence supporting count III during closing argument, and he claims that this error was "especially significant—and damaging to Garza's case—given the insufficient evidence supporting that count." Br. of Appellant at 12-13. Garza further argues that a curative instruction to disregard this argument would not have been effective because, given the similarities between the prosecutor's closing argument regarding count III and the evidence supporting count II, the argument "could have easily misled or confused the jury, who did not have the benefit of reviewing the written transcript and carefully parsing the three alleged incidents." *Id.* at 14. The State concedes that the prosecutor misstated the evidence, and we accept the State's concession. But we disagree with Garza that a curative instruction could not have cured the prejudice.

To establish prosecutorial misconduct, a defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442,

258 P.3d 43 (2011). If a defendant shows that the prosecutor's conduct was improper, this court must determine whether the improper conduct prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). A prosecutor's improper conduct results in prejudice when "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" *Thorgerson*, 172 Wn.2d at 443 (alteration in original) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

Where, as here, a defendant fails to object to alleged prosecutorial misconduct, the defendant is deemed to have waived any error unless they show that the misconduct was so flagrant and ill intentioned that an instruction from the trial court could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. To meet this heightened standard, "the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

A prosecutor's comments during closing argument are reviewed "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *State v. Jones*, 144 Wn. App. 284, 290, 183 P.3d 307 (2008). "Although prosecuting attorneys have some latitude to argue facts and inferences from the evidence, they are not permitted to make prejudicial statements unsupported by the record." *Id.* at 293; *see also State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012) ("[A] prosecutor commits reversible misconduct by urging the jury to decide a case based on evidence outside the record."). But we presume that juries follow the instruction that counsel's arguments are not evidence. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 172, 410 P.3d 1142 (2018); *State v. Warren*, 165 Wn.2d 17, 29, 195 P.3d 940 (2008).

The Supreme Court has held that when a prosecutor argues facts not in evidence, this will not always rise to the level of misconduct that is flagrant and ill intentioned. *See Phelps*, 190 Wn.2d at 170. Washington courts have found misconduct to be flagrant and ill intentioned in "a narrow set of cases," including "comments alluding to race or a defendant's membership in a particular group, or where the prosecutor otherwise comments on the evidence in an inflammatory manner." *Id.* But the inquiry on review "should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

Here, the State clearly identified "[t]he third incident that supports [c]ount III" and then described this incident to the jury by saying that Garza kissed IR and rubbed her bare chest under her shirt. 5 VRP at 545. IR did not testify to any kissing during this incident, and she did not testify that Garza rubbed her chest during this incident. She said that he put his hands "in" and "underneath" her shirt and that she was not wearing a bra. 3 VRP at 279-80. The State concedes that this was an improper summary of the evidence.

The prosecutor's misstatement did not appear to be flagrant or ill intentioned, however. It could have resulted from genuine confusion regarding the testimony supporting each count because IR did testify that Garza kissed her and touched her chest in support of count II. Further, Garza did not object to this argument, so he must show both that no curative instruction would have obviated the argument's prejudicial effect and that there was a substantial likelihood the prejudicial effect impacted the jury's verdict.

Prior to closing argument, the jury was instructed that "the lawyers' statements are not evidence. The evidence is the testimony and the exhibits." CP at 102. Jurors were also instructed

that they had to "decide each count separately" and find "separate and distinct" sexual contact for each count. CP at 105, 113, 118, 121. If Garza had objected to the prosecutor's misstatement, these instructions could have been repeated to clarify the evidence that the jury was permitted to consider. We presume juries follow instructions that counsel's arguments are not evidence. *Phelps*, 190 Wn.2d at 172; *Warren*, 165 Wn.2d at 29.

The prosecutor's bolstering of IR's testimony during closing was inappropriate. But Garza fails to meet the heightened standard of showing that the misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. We therefore hold that the prosecutor's misstatement of the evidence was not misconduct warranting reversal.

## II. SUFFICIENCY OF THE EVIDENCE

Garza also argues there was insufficient evidence of sexual contact to support his conviction on count III, the incident near the computer in Garza's bedroom. Specifically, Garza argues there was insufficient evidence that he touched IR's "'sexual or other intimate parts'" during this incident because IR's testimony did not describe exactly where she was touched underneath her shirt. Br. of Appellant at 7 (quoting RCW 9A.44.010(2)). Further, Garza argues the record does not demonstrate that the alleged touching was done for sexual gratification. We disagree.

The State must prove every element of the charged offense beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016) (citing U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). When reviewing a claim of insufficient evidence, we ask whether a rational trier of fact could find

that the State proved all of the crime's essential elements beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). We view all the evidence in the light most favorable to the State. *Id.* And the defendant admits the truth of the State's evidence and all reasonable inferences that arise therefrom. *Id.* at 265-66. Both circumstantial and direct evidence are considered equally reliable. *Id.* at 266.

"A person is guilty of child molestation in the first degree when the person has . . . sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

"Contact is 'intimate' within the meaning of the statute if the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper." *State v. Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008). If the contact is "directly to the genital organs or breasts," sexual contact may be found as a matter of law. *In re Welfare of Adams*, 24 Wn. App. 517, 519, 601 P.2d 995 (1979). If the contact is with a body part "'in close proximity to the primary erogenous areas,'" a jury may determine that the part is intimate and infer that sexual contact occurred. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (quoting *Adams*, 24 Wn. App at 521). Washington courts have concluded that touching a child's buttocks, hips, upper inner thighs, or lower abdomen is touching in close proximity to a primary erogenous area. *Harstad*, 153 Wn. App. at 21-22; *Adams*, 24 Wn. App. at 520-21.

Evidence of sexual gratification shows that the touching was not "inadvertent." *State v. T.E.H.*, 91 Wn. App. 908, 916, 960 P.2d 441 (1998). Sexual gratification is not an essential element of the offense, but it clarifies the meaning of sexual contact, which is an essential element. *State v. Lorenz*, 152 Wn.2d 22, 34-35, 93 P.3d 133 (2004). We look to the totality of the circumstances to determine whether the element of sexual contact was established. *Harstad*, 153 Wn. App. at 21. Where an adult touches a child's intimate parts while the adult is "not involved in any caretaking function," the jury may consider "the circumstantial evidence surrounding the touching" and infer that the touching was done for sexual gratification. *State v. Wilson*, 56 Wn. App. 63, 68, 782 P.2d 224 (1989).

With regard to count III, IR testified, "I ended up sitting on his lap . . . and then he started putting his hands in my shirt. . . . I ended up just being on his lap and then he ended up -- I was wearing a red shirt and he ended up having his hands underneath my shirt." 3 VRP at 279-80. IR also testified that she was not wearing a bra. She recalled a picture of women in bikinis near the computer during the incident, and Garza told IR that she would grow up to "'be like [the women in bikinis] and take pictures like that.'" 3 VRP at 269.

The State's evidence shows that Garza touched IR under her shirt while she was not wearing a bra. Viewing the evidence in the light most favorable to the State, a jury could have concluded that Garza touched IR's torso under her clothes "'in close proximity to the primary erogenous areas.'" *Harstad*, 153 Wn. App. at 21 (quoting *Adams*, 24 Wn. App. at 521). Further, the State presented circumstantial evidence from which the jury could have inferred that the touching was done for sexual gratification. IR was 11 years old, old enough that Garza could not legitimately claim to be performing a caretaking function. She was sitting on Garza's lap for no

identifiable reason, in an area where Garza kept pictures of women in bikinis, and Garza had made sexual comments to IR about those pictures. In addition, because IR's description of this incident resembled her description of the incident underlying count II, the jury could have inferred a pattern of behavior. The totality of these facts supports a finding of sexual contact.

Garza contends that because the prosecutor misstated the evidence in support of count III, it is possible the jury also misunderstood the evidence supporting count III. However, whether the prosecutor accurately described the evidence in closing does not impact the sufficiency of that evidence.

In sum, viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to support Garza's conviction for count III.

### III.  NONCORROBORATION INSTRUCTION

Washington law provides that "[i]n order to convict a person of [a sex offense defined in chapter 9A.44 RCW] it shall not be necessary that the testimony of the alleged victim be corroborated." RCW 9A.44.020(1). "[I]t is improper for a judge to communicate to the jury an opinion as to the truth or value of witness testimony. But an instruction that accurately states the applicable law is not a comment on the evidence." *State v. Zimmerman*, 130 Wn. App. 170, 180-81, 121 P.3d 1216 (2005) (citation omitted).

The Supreme Court last reviewed an instruction permitting the jury to convict a defendant of a sex offense on uncorroborated testimony in 1949, and it determined that there was no error in the instruction. *State v. Clayton*, 32 Wn.2d 571, 578, 202 P.2d 922 (1949). In 2005, we followed *Clayton* and held that administering the noncorroboration instruction does not improperly comment on the evidence. *Zimmerman*, 130 Wn. App. at 182. In *Zimmerman*, we observed that

13

the noncorroboration instruction is not included within the Washington Pattern Criminal Jury Instructions and noted that the Supreme Court Committee on Jury Instructions recommends against using the instruction. *Id.* But we concluded, "Although we share the Committee's misgivings, we are bound by *Clayton* to hold that the giving of such an instruction is not reversible error." *Id.* at 182-83. Division One reached the same conclusion more recently in *State v. Chenoweth*, 188 Wn. App. 521, 537, 354 P.3d 13, *review denied*, 184 Wn.2d 1023 (2015).

We stayed this case after the Supreme Court granted review in *State v. Svaleson*[2] on the issue of whether a noncorroboration instruction is an unconstitutional comment on the evidence. However, the Supreme Court terminated review of *Svaleson* without deciding this issue after Svaleson's death. Garza recognizes that *Clayton* remains controlling precedent that precludes reversal on this issue.

Here, the jury was instructed, "In order to convict a person of child molestation in the first degree, . . . it shall not be necessary that the testimony of the alleged victim be corroborated. The jury is to decide all questions of witness credibility." CP at 106. We are still bound by *Clayton* to hold that this noncorroboration instruction is constitutional.

IV. CONDITIONS OF COMMUNITY CUSTODY

Garza argues several conditions of community custody should be stricken from his judgment and sentence—the prohibition on possessing pictures of "any minors," the prohibition on entering "drug areas," the requirement of a substance abuse evaluation, and the requirement of

---

[2] No. 48855-8-II, slip op. (Wash. Ct. App. May 30, 2018), http://www.courts.wa.gov/opinions/pdf/ D2% 2044885-8-II%20Unpublished%Opinion.pdf, *review granted*, 195 Wn.2d 1008 (2020).

a mental health evaluation. CP at 157. The State agrees that the prohibition on possessing pictures of any minors is not reasonably related to Garza's conviction. The State further agrees that the condition prohibiting entry into drug areas and the condition requiring a substance abuse evaluation are not reasonably related to Garza's crime. Finally, the State agrees that a mental health evaluation should not be imposed. We accept the State's concessions.

The trial court may impose crime-related conditions on a defendant's term of community custody. RCW 9.94A.703(3)(f). "Crime-related" refers to conduct that "directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "'Directly related' includes conditions that are 'reasonably related' to the crime." *State v. Irwin*, 191 Wn. App. 644, 656, 364 P.3d 830 (2015) (quoting *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)).

Garza was convicted of first degree child molestation. Although IR testified that Garza kept a picture of women near his computer, the commission of this crime did not involve any pictures of minors. The prohibition on pictures of any minors is not "crime-related" as defined by RCW 9.94A.030(10). Therefore, it should not have been imposed under RCW 9.94A.703(3)(f).

Similarly, substance abuse was not found to be related to Garza's crimes. In fact, the trial court expressly declined to impose a substance abuse evaluation at sentencing, saying, "I don't think there's enough evidence in the record that I have, directly, that that's an issue for him." 6 VRP at 592. Because the record does not establish that substance abuse was related to Garza's offense, his presence in "drug areas" similarly should not have been prohibited under RCW 9.94A.703(3)(f).

The trial court specifically refused to order a substance abuse evaluation on the record, so the imposition of that condition was a clerical error.

Finally, the State no longer seeks a mental health evaluation as a condition of community custody and, because the State has withdrawn this request, it should be stricken from the judgment and sentence on remand.

We direct the trial court to strike these four conditions from Garza's judgment and sentence on remand.

## V. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

None of the matters raised in Garza's SAG warrants reversal.

### A. Matters Outside the Record

Garza raises several arguments that rely on facts outside the record. Garza argues his counsel did not tell him who the trial witnesses were going to be before trial and, therefore, Garza was unable to suggest questions for his counsel to ask. He assigns error to his counsel's failure to use character letters, pictures, or details from Garza's life. He also claims that his attorney insisted on him taking a lie detector test so that counsel "could give . . . 100% defending [Garza]." SAG at 2. Garza complains that the court reporter gave him "hateful looks" during the trial, which he claims were noticed by the jury, and that the trial court encouraged the jury to reach a verdict by telling them a hung jury would cost the county money. SAG at 1.

Under *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995), "[i]f a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." Because the facts allegedly

supporting these arguments are not contained within the record currently before the court, we cannot consider them.

B.      Matters Barred by RAP 10.10(c)

Garza argues the prosecutor made statements that were "not true" and made him "look like a monster." SAG at 4. Under RAP 10.10(c), an appellant who files a SAG must "inform the court of the nature and occurrence of alleged errors." Because Garza does not identify specific statements by the prosecutor as false or inflammatory, we cannot review this claim.

C.      Matters Not Properly Reviewed on Appeal

Garza challenges facts that IR testified to. Garza claims he only had a computer in his downstairs apartment, not in his upstairs apartment, and he explains that he lived in Port Orchard, but never in Gig Harbor. It was acknowledged during trial that IR did not fully remember the details of Garza's various homes, and the jury could consider this in weighing IR's testimony. On appeal, this court "must defer to the jury on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence." *State v. Liden*, 138 Wn. App. 110, 117, 156 P.3d 259 (2007). We cannot reweigh the evidence on appeal and, therefore, we reject these arguments.

D.      Matters Unsupported by the Record

Contrary to what the record shows, Garza argues he was not given earphones that enabled him to hear the proceedings until "later during the trial." SAG at 1. The record shows that the trial court stopped at the beginning of the trial when Garza could not hear to ensure that the device he was using was turned on. The trial court told Garza, "It's really important that you're able to hear everything," and Garza's attorney told him, "If there's a witness you can't hear, you let me know

right away." 1 VRP at 5. The record shows that accommodations were provided at the beginning of the trial to ensure Garza could hear the proceedings.

E.      Ineffective Assistance of Counsel

Finally, Garza argues that his counsel's questioning of IR's parents and Detective Song was inadequate. But he fails to show that his counsel's performance was deficient rather than strategic.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Ineffective assistance of counsel is a two-pronged inquiry. *Grier*, 171 Wn.2d at 32. To prevail, Garza must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. *Id.* at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Appellate courts apply "exceptional deference . . . when evaluating counsel's strategic decisions," and "[i]f trial counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim . . . [of] ineffective assistance." *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "To rebut the presumption of reasonableness, a defendant must establish an absence of any legitimate trial tactic that would explain counsel's performance." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017).

Garza argues that his counsel should have further questioned IR's parents during the trial about IR's behavior. But Garza also reports that his counsel declined to question IR's parents

further because he believed that it would "hurt [Garza's] case." SAG at 2. We defer to counsel on strategic decisions.

Garza also contends that his counsel should have further questioned Detective Song and notes that he was on medication when Song interviewed him. Garza seems to argue that his counsel should have highlighted his medicated state in order to undermine the credibility of his statements to Song. But Garza had already stipulated that his statements to Song were voluntary. The trial court ensured that Garza himself signed this stipulation and discussed it with his attorney. Garza's counsel was therefore precluded from arguing at trial that Garza's statements to Song were involuntary due to the influence of medication. On this record, we hold that counsel's performance was not deficient. We need not reach the prejudice inquiry.

## CONCLUSION

We affirm Garza's convictions, but we remand for the trial court to strike the challenged conditions of community custody from Garza's judgment and sentence.

19

No. 53194-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Sutton, A.C.J.

Cruser, J.