# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83344-8-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| DANIEL R. L. POWELL, | |
| Appellant. | |

APPELWICK, J. — Powell appeals from his conviction for second degree assault. He challenges admission at trial of his statements made to law enforcement officers, without the benefit of Miranda[1] warnings, while he was not under arrest, but also, not free to leave. We affirm.

## FACTS

Daniel Powell was temporarily staying with his friend Tovia Cuty and her boyfriend Scott Spencer. When Cuty notified Powell that he needed to leave, Powell became angry and they argued for hours. Spencer returned home during the argument. The two men had a physical altercation, with Powell punching Spencer in the head and squeezing his neck. Spencer could not breathe and he lost consciousness. Cuty screamed and tried to pull Powell off of Spencer. When she heard Spencer gurgle and try to catch his breath, she threatened to call the

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Citations and pin cites are based on the Westlaw online version of the cited material.

police. Powell stopped and asked Cuty not to call the police. She told Powell to leave immediately.

Unbeknownst to Cuty and Spencer, Powell spent the night in his car outside the house. The next day, Cuty and Spencer opened the garage door to take out the garbage and discovered that Powell was still outside the house. Powell was angry and cold after sleeping in his car. He tried to get into the garage. Cuty and Spencer had to close the garage door to prevent Powell from forcing his way inside. Powell remained on the property, and at one point was "circling the house." Spencer eventually called the police.

Two Clark County Sheriff's deputies arrived. One spoke with Spencer who informed them about the incident the previous evening. Powell exited his car, and the other deputy made contact with him. The deputy questioned Powell about his relationship with Spencer and the altercation the previous evening.

The State charged Powell with second degree assault for strangling Spencer.

The trial court held a CrR 3.5 hearing on the admissibility of Powell's statements to law enforcement. During the hearing, the deputy testified that he did not tell Powell that Powell was not free to leave. Nor did he threaten to arrest Powell if Powell did not answer his questions. The deputy also did not recall Powell asking to leave the scene. The deputy did not handcuff or place Powell in his patrol vehicle until after Powel was arrested.

2

Powell testified that he asked the deputies whether he was under arrest. The deputies responded that he was not under arrest, they were just asking some questions. Powell asked whether he "may leave if need be," and "was told no."

The trial court made several findings of fact. The court identified that the testimony differed as to whether Powell was free to leave, and accepted Powell's testimony that he "asked the deputies if he was free to leave and was told no." The court concluded that Powell was not "in custody" when he spoke with law enforcement outside the residence because his "freedom of movement was not curtailed to a degree that would be considered formal trappings of arrest." The court also determined that Powell's statements to the deputies were knowingly, intelligently, and voluntarily made. The court ruled the statements admissible.

A jury convicted Powell of second degree assault as charged. He received a sentence at the low end of the standard sentencing range.

Powell appeals.

DISCUSSION

I.  Statements to Police

Powell contends the trial court should have suppressed the statements he made to the Clark County Sheriff's Office deputies because he was interrogated in custody without Miranda warnings. The federal and Washington State constitutions guarantee the right against self-incrimination. U.S. CONST. amends V, VI, XIV; WASH. CONST. art. I, § 9. Miranda warnings were developed to protect the right against self-incrimination "while in the coercive environment of police custody." State v. Heritage, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). To serve

3

this purpose, Miranda warnings must be given before custodial interrogation of a criminal suspect by an agent of the state. Id. We presume statements obtained in violation of Miranda requirements are involuntary. Id.

For purposes of Miranda, "custodial" refers to "whether a defendant's movement was restricted at the time of questioning." State v. Lorenz, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). In contrast to custodial arrest, an officer may conduct a Terry[2] stop to briefly detain a person for questioning without a warrant if the officer has reasonable suspicion that the person is or is about to be engaged in criminal activity. State v. Fuentes, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). An officer making an investigative stop "may ask a moderate number of questions to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the subject 'in custody' for the purposes of Miranda." Heritage, 152 Wn.2d at 219 (quoting Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)). A Terry stop constitutes a seizure under constitutional analysis but is "'substantially less police dominated'" than police interrogations contemplated by Miranda. Id. at 152 Wn.2d at 218 (internal quotation marks omitted) (quoting Berkemer, 468 U.S. at 439.

An investigatory detention does not convert into a custodial arrest requiring a Miranda warning just because the suspect is not free to leave. State v. Marcum, 149 Wn. App. 894, 910, 205 P.3d 969 (2009). The objective measure of custody is whether a reasonable person would believe they are in custody "to a degree associated with formal arrest." Lorenz, 152 Wn.2d at 36-37. We review a trial

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

court's custodial determination de novo. Id. at 36. We give great deference to a trial court's resolution of the circumstances surrounding the encounter. State v. Harrington, 167 Wn.2d 656, 662, 222 P.3d 92 (2009). Challenged findings of fact that are supported by substantial evidence are binding.[3] State v. Johnson, 8 Wn. App. 2d 728, 737, 440 P.3d 1032 (2019). Unchallenged findings are verities on appeal. Id.

Powell contends the trial court erred by concluding that his freedom of movement was not curtailed to the degree of a formal arrest because he was not free to leave. Powell fails to recognize the difference between seizure and custodial arrest for the purposes of Miranda.

The deputies arrived at Cuty's house in response to a reported disturbance. Powell exited the car voluntarily and spoke with the deputies for approximately 10 minutes about the reported incident and Powell's relationship with Spencer. While Powell was not free to leave, the deputies did not pressure, threaten, or coerce Powell into answering their questions. And, deputies expressly informed Powell he was not under arrest. A reasonable person would not have believed they were in custody "to a degree associated with formal arrest." See Lorenz, 152 Wn.2d at 36. The encounter was a Terry stop to investigate, conducted to confirm or dispel

---

[3] Powell challenges one finding of fact. Finding of fact 6 states, "[t]he defendant was not in handcuffs and not placed in a patrol vehicle prior to questioning. His movements were not restricted." Powell argues that substantial evidence supports that "[h]is movements were not restricted" only as it relates to physical restraints. According to Powell, "[t]o the extent that part of Finding 6 might be read to indicate there was no seizure as a matter of law, it is not a finding, it is a conclusion of law, and must be reviewed de novo." We do not disagree with these claims.

Powell's involvement in the reported disturbance. The fact that the deputies told Powell he was not free to leave did not escalate the contact to custodial arrest for the purposes of Miranda.

Powell argues that State v. France, 129 Wn. App. 907, 120 P.3d 654 (2005), supports his claim that he was in custody because no reasonable person would have felt free to leave. In France, police stopped the defendant as a suspect in a domestic violence incident. Id. at 908. They informed the defendant that "he would not be allowed to go until the matter was cleared up." Id. at 910. As a result, the duration of the detention was unlimited and "police did not limit the detention to verify specific information France voluntarily provided." Id. As a result, "neither France nor any reasonable person in his position would have felt that he was free to leave until he satisfactorily explained" the assault. Id. at 911. The court noted that "police had probable cause to make an arrest but delayed doing so to avoid a Miranda warning." Id.

Powell's situation differs significantly from the facts in France. The deputies did not have probable cause to arrest Powell, they were investigating in response to a reported disturbance. The conversation between Powell and the deputies was not unlimited or open ended. It was short, voluntary, and confined to Powell's relationship to Spencer and the incident the previous night. And, Powell was clearly informed that he was not under arrest. France does not persuade us that Powell was under custodial arrest at the time he made his statements to the deputies.

II. Bail and CrR 3.2

Powell argues the trial court denied his rights under CrR 3.2 and the constitution by improperly imposing financial conditions on his pretrial release. But, Powell has already been convicted at trial, we can no longer provide effective relief for a pretrial bail issue. See State v. Ingram, 9 Wn. App. 2d 482, 490, 447 P.3d 192 (2019), review denied, 194 Wn.2d 1024 456 P.3d 401 (2020). The issue is moot. State v. Gentry, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995) ("A case is moot if a court can no longer provide effective relief"). We may consider a moot issue that involves matters of continuing and substantial public interest. State v. Cruz, 189 Wn.2d 588, 598, 404 P.3d 70 (2017). In determining whether a case satisfies this exception we consider (1) the public or private nature of the issue, (2) whether guidance on the issue is desirable, and (3) the likelihood the issue will recur. Id. While the bail issue is public and likely to recur, recent case law has provided guidance on this issue. See Ingram, 9 Wn. App. 2d at 496; State v. Huckins, 5 Wn. App. 2d 457, 468-69, 426 P.3d 797 (2018). There is no need for us to address the issue again.

Affirmed.

Appelwick, J.

WE CONCUR:

Bowman, J.          Mann, C.J.

7